IN THE MATTER OF: D.M.

No. COA10-1280

(Filed 19 April 2011)

**1. Child Custody and Support—custody awarded to grand-mother—no findings or conclusions—father acted inconsistently with parental rights**

The trial court erred in awarding permanent custody of a minor child to her maternal grandmother where the court specifically found that neither of the child's parents was unfit to parent and the trial court failed to make any findings of fact or conclusions of law as to whether respondent father had acted inconsistently with his parental rights.

**2. Child Custody and Support—order reversed and remanded— findings—reunification—visitation**

The Court of Appeals reversed an order granting custody of a minor child to her maternal grandmother and remanded the case to the trial court. On remand, the trial court was to address any efforts made by the Department of Social Services to reunite the child with her father. Furthermore, if the trial court did not return the child to her father's home and instead granted him visitation privileges, the trial court was to set forth the time, place, and conditions of his visitation privileges.

Appeal by respondent-father from order filed 20 July 2010 by Judge Joseph Moody Buckner in District Court, Orange County. Heard in the Court of Appeals 28 February 2011.

*No brief filed for petitioner-appellee.*

*Pamela Newell for appellee-guardian ad litem.*

*Lisa Skinner Lefler for respondent-appellant.*

STROUD, Judge.

Respondent-father appeals from a permanency planning order which granted permanent custody of his daughter to her maternal grandmother. For the following reasons, we reverse.

I. Background

On 9 April 2009, Orange County Department of Social Services ("DSS") filed a juvenile petition alleging eight-year-old Dana[1] was neglected and dependent. Prior to the filing of the juvenile petition, Dana was living with her mother and her half-brother, Bob.[2] The trial court entered a non-secure custody order placing custody of Dana and Bob with DSS. DSS placed Dana in her maternal grandmother's home. The trial court set a custody review hearing for 16 April 2009.

At the custody review hearing on 16 April 2009, the trial court continued custody and placement authority with DSS. Dana remained placed with her maternal grandmother. The trial court directed DSS to conduct a home study of respondent-father's home and to provide visitation with him at the scheduling and "discretion of the treatment team."

---

1. Pseudonyms will be used to protect the identity of the minor children.

2. Respondent-father is not Bob's father.

**IN RE D.M.**

[211 N.C. App. 382 (2011)]

On 4 June 2009, an adjudication and disposition hearing was held, and the order was entered on 10 July 2009. The trial court adjudicated Dana as a "dependent juvenile[] within the meaning and scope of N.C.G.S. 7B-101(9)" and left pending the issue of whether she was a neglected juvenile. The trial court found that the home study of respondent-father was favorable, but that his "DWI, history/pattern of alcohol use and how it would affect his ability to parent . . . require[d] a more thorough assessment" before a placement decision could be made. Again, custody and placement authority was retained by DSS with respondent-father having visitation with Dana "at the discretion of the treatment team."

DSS reported that on 17 June 2009, DSS changed Dana's placement from her maternal grandmother's home to the home of respondent-father. On 3 September 2009 and 7 January 2010, further custody review hearings were conducted by the trial court. At the time of these review hearings, Dana was still in placement with respondent-father and DSS retained custody and placement authority. Respondent-father and Dana's mother were also ordered to attend custody mediation. The mediation was held on 15 February 2010 but was not successful. On 17 February 2010, DSS removed Dana from respondent-father's home and placed her again with her maternal grandmother.

A permanency planning hearing was held on 18 March 2010. In its 7 April 2010 order, based on the 18 March 2010 hearing, the trial court ordered the permanent plan to be custody with the maternal grandmother. DSS continued to have custody and placement authority of Dana. Visitation with respondent-father was continued "at the discretion of the treatment team." The 7 April 2010 order also set another review hearing for 15 April 2010, but following continuances, the case was next heard on 17 June 2010. After the 17 June 2010 permanency planning hearing, in its 20 July 2010 order, the trial court awarded permanent custody to Dana's maternal grandmother and visitation for respondent-father. Respondent-father appeals.[3]

---

3. Respondent-father's notice of appeal lists three separate orders and one motion which was never heard before the trial court. But in respondent-father's brief, he states "[f]rom the 17 June 2010 order, the respondent-father" appeals. Respondent-father's arguments in his brief also address the 17 June 2010 hearing upon which the 20 July 2010 order is based. Accordingly, we will only consider the 20 July 2010 order on appeal. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.")

**IN RE D.M.**

[211 N.C. App. 382 (2011)]

II. 20 July 2010 Order

**[1]** Respondent-father argues that the trial court erred in awarding custody of Dana to her maternal grandmother in violation of his constitutional rights as a parent. Respondent-father does not challenge the trial court's findings of fact but argues that the court did not consider or make proper conclusions of law as to his constitutionally protected rights as a parent.

> This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law. If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal. The trial court's conclusions of law are reviewable *de novo* on appeal.

*In re P.O.*, —— N.C. App.——, ——, 698 S.E.2d 525, 530 (2010) (citation and quotation marks omitted).

"[A] natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status." *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005). While this analysis is often applied in civil custody cases under Chapter 50 of the North Carolina General Statutes, it also applies to custody awards arising out of juvenile petitions filed under Chapter 7B. *See generally In re B.G.*, 197 N.C. App. 570, 571-74, 677 S.E.2d 549, 551-52 (2009) (applying the constitutional analysis in a juvenile petition case).

Dana was adjudicated *only* as dependent, and DSS's juvenile petition alleging dependency was based solely on the actions of Dana's mother and not respondent-father. Here, the trial court specifically found that "[n]either parent is unfit to parent[,]" and thus it could not award permanent custody to the maternal grandmother in the absence of findings of fact and conclusions of law that respondent-father had acted inconsistently with his constitutional rights as a parent. *See id.* Because the trial court failed to make *any* findings of fact or conclusions of law as to whether respondent-father had acted inconsistently with his parental rights, it erred in awarding permanent custody to Dana's maternal grandmother. *See id.* Accordingly, we reverse the 20 July 2010 order awarding custody of Dana to her maternal grandmother.

**[2]** Furthermore, although we are reversing the 20 July 2010 order due to the trial court's failure to consider whether respondent-father had acted inconsistently with his constitutionally protected status as a parent, we will address some other issues which will likely recur on remand, in the hope of avoiding future appeals in this case. First, in the 20 July 2010 order, the trial court made findings of fact regarding the "reasonable efforts" of DSS to reunite Dana with her parents. N.C. Gen. Stat. § 7B-101(18) defines "reasonable efforts" as

> [t]he diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.

N.C. Gen. Stat. § 7B-101(18) (2009). The North Carolina statutes do not include a definitive listing of the services which may be provided as a part of "reasonable efforts," but there is a

> federal regulation setting forth a nonexclusive list of services which *may* satisfy the "reasonable efforts" requirement. 45 C.F.R. § 1357.15(e)(2) (1996) (*i.e.*, crisis counseling, individual and family counseling, services to unmarried parents, mental health counseling, drug and alcohol abuse counseling, homemaker services, day care, emergency shelters, vocational counseling, emergency caretaker, and "other services which the agency identifies as necessary and appropriate").

*In re Helms*, 127 N.C. App. 505, 512 n.3, 491 S.E.2d.672, 677 n.3 (1997) (emphasis in original).

In the 20 July 2010 order, the trial court made the following findings as to "reasonable efforts":

> Prior to this hearing, reasonable efforts to achieve the permanent plan of reunification for the juvenile were made by OCDSS including, but not limited to, the following:
>
> a.   Case management services to . . . [mother] and the children in the home.

b.  Referral to substance abuse treatment and mental health services through Horizons.

c.  Referral to the Center for Child and Family Health for mental health services for [Dana].

d.  Referral to Kidscope for a behavioral evaluation for [Bob].

e.  Referral to the CDSA for a developmental evaluation for [Bob].

f.  Transportation to and supervision of visits between [Dana], [Bob], and . . . [mother].

g.  Consistent communication with . . . [mother's] treatment providers and support system.

h.  Home studies of and placement with children's respective fathers.

The trial court made similar findings as to "reasonable efforts" in the adjudication and review orders prior to the 20 July 2010 order. Yet these findings do not address any efforts made in regard to respondent-father beyond the home study which resulted in Dana's placement with him, and these actions obviously occurred prior to Dana's placement with respondent-father and thus prior to DSS's removal of Dana from respondent-father's home. While findings regarding "reasonable efforts" are not required at the permanency planning hearing, such findings should have been made regarding respondent-father at the previous hearings when DSS retained custody of Dana. *See* N.C. Gen. Stat. § 7B-507 (2009) ("(a) An order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order: . . . (2) Shall contain findings as to whether a county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile . . . . "). Although Dana was initially removed from her mother, she was later placed by DSS with respondent-father. Yet once Dana was placed with him, our record does not demonstrate any "reasonable efforts" by DSS to assist him in parenting Dana or to address the conditions which caused DSS to remove her from his home. Although DSS developed a case plan and made "reasonable efforts" to assist Dana's mother, it appears that both the trial court and DSS failed to consider that "reasonable efforts" may be required as to both parents where, as here, DSS had removed the minor child from

IN RE D.M.

[211 N.C. App. 382 (2011)]

both parents separately. As best we can tell from the record before us, it is possible that findings regarding "reasonable efforts" may be absent because DSS did not make any "use of preventive or reunification services" in regard to respondent-father. N.C. Gen. Stat. § 7B-101(18).

Second, we note that several orders, including the 17 July 2010 order which granted permanent custody of Dana to her maternal grandmother, leave visitation with respondent-father entirely in the discretion of "the treatment team." However, the trial court must set the parameters of visitation. *See In re E.C.*, 174 N.C. App. 517, 522, 621 S.E.2d 647, 652 (2005) ("The awarding of visitation of a child is an exercise of a judicial function, and a trial court may not delegate this function to the custodian of a child. . . . In the absence of findings that the parent has forfeited their right to visitation or that it is in the child's best interest to deny visitation the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place, and conditions under which such visitation rights may be exercised." (citation, quotation marks, and brackets omitted)). On remand, if the trial court does not return Dana to respondent-father's home and instead grants him visitation privileges, the trial court should set forth "the time, place, and conditions" of his visitation privileges. *Id.*

### III. Conclusion

For the reasons stated above, we reverse the 20 July 2010 order and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges HUNTER, JR. Robert N. and ERVIN concur.