DAVIS, Judge.
M.B. ("Respondent") appeals from the trial court's 16 June 2014 adjudication order and 8 September 2014 disposition order determining that it was in the best interests of his minor child ("Ed")[1] to remain in the temporary nonsecure custody of the Alleghany County Department of Social Services ("DSS"). After careful review, we affirm.
Factual Background
Ed, the son of Respondent and C.D., was born in July 2009 and was five years old at the time of the trial court's 8 September 2014 disposition order. DSS initially became involved in Ed's case on 11 July 2010, when it filed a juvenile petition alleging Ed was a neglected and dependent juvenile based upon the fact that Respondent and C.D. were both incarcerated. In a consolidated adjudication and disposition order entered on 13 August 2010, Ed was adjudicated a neglected and dependent juvenile and placed in the custody of DSS. On 25 July 2011, a permanency planning order was entered placing Ed with his paternal grandmother, A.S., and granting her guardianship of him. In September 2013, A.S. returned Ed to the custody of his mother, C.D.
On 14 May 2014, DSS filed a new juvenile petition alleging that Ed was a neglected juvenile. In its petition, DSS alleged that on 14 May 2014, it received multiple reports that Ed had been exposed the previous day to domestic violence between C.D. and T.D. (C.D.'s husband and Ed's stepfather) with law enforcement officers becoming involved. The petition further alleged that (1) C.D. and T.D. were impaired on 14 May 2014 in the presence of Ed; (2) C.D. was not taking Ed to counseling that had been recommended as a result of a sexual incident involving another child; (3) C.D. was overmedicating Ed and taking some of his medications herself; (4) Ed was exposed to a domestic dispute between Respondent, T.D., and C.D. during which Ed was physically pulled from one party to the other; and (5) Respondent had a significant criminal history.
On that same date, the trial court issued an order for nonsecure custody of Ed, placing him with DSS. DSS subsequently placed Ed in a licensed foster home.
On 3 June 2014, an adjudication hearing was held before the Honorable Michael Duncan in Alleghany County District Court. On 16 June 2014, Judge Duncan entered an order adjudicating Ed as a neglected juvenile based, in part, upon his parents' stipulation that there was clear, cogent, and convincing evidence that he was a neglected child. Respondent and C.D. also agreed that the "hearing on disposition would be scheduled for August 5, 2014 at which hearing both parents [would] be permitted to introduce evidence as to whether they [were] a non-offending parent." The trial court ordered that Ed remain in the nonsecure custody of DSS but that DSS "make a reasonable effort to return [Ed] to his own home or the home of [Respondent]." The trial court further ordered both parents to comply with their Family Services Case Plans.
On 5 August 2014, a disposition hearing was held before the Honorable William Brooks. Respondent did not attend this proceeding. At the hearing, the trial court heard testimony from DSS social worker Lisa Osborne and A.S., Ed's paternal grandmother. Case reports from DSS and the Guardian Ad Litem ("GAL") for Ed were also admitted for the trial court's consideration. At the close of the evidence, Respondent's counsel argued that "because [Respondent] has yet to be determined the offending parent in this case and has not been determined by the Court to be unfit, that this particular recommendation by DSS [that Ed remain in foster care] is a violation of his constitutional right to custody of his child[.]"
On 8 September 2014, the trial court entered a disposition order concluding that it was in the best interests of Ed to remain in the legal and physical custody of DSS. The trial court based this conclusion, in part, on its finding that neither Respondent nor C.D. had completed their Family Services Case Plans. The trial court further found that there was no appropriate kinship placement available for Ed. The court also "decline[d] at this time to find that the [Respondent] is an offending parent while denying finding that [Respondent's] constitutional rights have been violated." However, the court specifically stated in its order that placement of Ed with DSS was not permanent, instead ordering DSS to make a "reasonable effort to return [Ed] to his own home" and setting a subsequent "Review Hearing" for 4 November 2014. On 9 September 2014, Respondent filed a notice of appeal as to Judge Duncan's 16 June 2014 adjudication order and Judge Brooks' 8 September 2014 disposition order.
Analysis
As an initial matter, although Respondent's notice of appeal references both Judge Duncan's 16 June 2014 adjudication order and Judge Brooks' 8 September 2014 disposition order, he limits his arguments on appeal solely to the 8 September 2014 disposition order. Therefore, any exception taken by Respondent relating to Judge Duncan's 16 June 2014 adjudication order is deemed abandoned. SeeN.C.R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").
It is well established that "[w]e review a dispositional order only for abuse of discretion. An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." In re B.W.,190 N.C.App. 328, 336, 665 S.E.2d 462, 467 (2008) (internal citations and quotation marks omitted). "On appeal from the trial court's disposition order, we must determine (1) whether the trial court's findings of fact were supported by clear and convincing evidence, and (2) whether its conclusions of law were supported by the findings." In re V.B.,---N.C.App. ----, ----, 768 S.E.2d 867, 868 (2015). "A trial court's findings of fact are binding on appeal if the findings are supported by competent evidence in the record." In re C.M.,183 N.C.App. 207, 212, 644 S.E.2d 588, 593 (2007). Furthermore, "findings of fact by the trial court in a nonjury trial have the force and effect of a jury verdict and are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." In re L.T.R.,181 N.C.App. 376, 381, 639 S.E.2d 122, 125 (2007) (citation and quotation marks omitted).
I. Respondent's Constitutionally Protected Parental Status
Respondent first argues that his right to due process was violated when the trial court ordered DSS's nonsecure custody of Ed to continue without first determining whether Respondent was an offending or unfit parent, thereby violating his constitutional right to parent Ed. We disagree.
"A natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status." In re D.M.,211 N.C.App. 382, 385, 712 S.E .2d 355, 357 (2011) (citation, quotation marks, and brackets omitted). This test, however, is only applicable in the context of a permanentplacement of a minor child in the custody of a third party. See id.("Because the trial court failed to make any findings of fact or conclusions of law as to whether respondent-father had acted inconsistently with his parental rights, it erred in awarding permanentcustody to [the minor child's] maternal grandmother." (emphasis in original omitted and emphasis added)).
Here, the court did not make any findings as to whether Respondent was an unfit parent, nor did it make findings that Respondent had acted inconsistently with his parental rights. However, the trial court awarded only temporarycustody of Ed to DSS. Because the trial court was not making a permanent custody determination, it was not required to make a finding concerning whether Respondent was an unfit parent or had acted inconsistently with his constitutionally protected parental rights. Accordingly, Respondent's argument is without merit.
II. Consideration of Relative Placement
Respondent next argues that the trial court abused its discretion by failing to place Ed with his paternal grandmother, A.S., pursuant to N.C. Gen.Stat. § 7B-903(a)(2)(c). We disagree.
N.C. Gen.Stat. § 7B-903(a)(2)(c) states, in pertinent part, as follows:
In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile.
N.C. Gen.Stat. § 7B-903(a)(2)(c) (2013). To comply with this statute, the trial court must (1) make factual conclusions and not simply recite evidence regarding placement with a relative; and (2) make specific findings of fact explaining why placement with a relative would not be in the child's best interests. In re L.L.,172 N.C.App. 689, 704, 616 S.E.2d 392, 401 (2005), abrogated on other grounds, In re T.H.T.,362 N.C. 446, 665 S.E.2d 54 (2008).
In the present case, the trial court's findings support its conclusion that placement of Ed with A.S. would not be in his best interests. In Finding of Fact 6, the trial court found as follows:
6. [Ed's] paternal grandmother, [A.S.] has offered her home as a kinship placement, however, this placement is objected to by [C.D.], the GAL and DSS. [Ed] is a very hyperactive child suffering from ADHD. He does well in a structured environment but in less structured environments he can be very hard to handle. He needs to be placed in a home with almost constant supervision by strong-willed, physically able adults. [A.S.] lives in a home with her son [D.S.], age 33, and [D.S.'s] 11 year old son [G.S.] She is diabetic, has recently had an episode of blacking out while driving and, in general, is not sufficiently physically fit to manage [Ed] on a daily basis. Recently [Ed] was the victim of sexual tampering by another child unrelated to these proceedings. Because of this [Ed] should have his own bedroom and be transported to therapy as required. [D.S.] is only occasionally employed in computer repair, has a prior conviction for marijuana possession and smokes in the home as detected by the Guardian ad Litem upon her visit to the home. [A.S.] was aware that the Guardian ad Litem would be inspecting her home, nevertheless, the Guardian ad Litem found the home not as clean or tidy as it should have known [sic] that a Guardian ad Litem visit was forthcoming. The Guardian ad Litem found numerous violent DVDs in addition to some children's books and is especially concerned that [Ed] obsesses on killing. [A.S.'s] only income is from her disability in the amount of just over $700 per month. The Court doubts that this amount would be sufficient to adequately meet the needs of all living in [A.S.'s] home if [Ed] were placed there. [A.S.] states emphatically that there are [sic] no alcohol or illegal drugs in her home. [A.S.] has no vehicle and depends upon others for transportation. [Ed] lived with [A.S.] for almost two years soon after he was born and she is very bonded to him. She asserts that [Ed] should be with her as opposed to a non-familial foster home. She promised the Court that she would not allow [Respondent] access to [Ed] in excess of what the Court allowed. Based upon their prior experience with and knowledge of the situation and the parties, DSS, the GAL and [C.D.] all implored the Court to refrain from placing [Ed] in [A.S.'s] home. [A.S.] did produce a letter from her doctor that her medical condition would not be an impediment to her caring for [Ed]. Although [A.S.] is a relative[,] placement of [Ed] with her would be contrary to the child's best interest.
Finding of Fact 6 is supported by competent evidence in the form of A.S.'s own testimony at the disposition hearing as well as case reports from DSS and the GAL that were admitted at the hearing for the trial court's consideration. The GAL's report states, in pertinent part, that
[a]lthough there is clearly much affection between [A.S.] and [Ed], I believe that placement with her at this time would not be in [Ed's] best interest. She evidently has multiple serious medical problems, and her ability to transport [Ed] to school and appointments is doubtful since she has no automobile. In addition, she is currently supporting 3 people (self, son [D.S.], grandson [G.S.] ) on her $790 per month disability check. It would seem that adding a fourth member of the household would be a financial strain. She admits that she is very dependent on her son [D.S.] (who does not have a job) for 'help,' and it is doubtful that she could maintain the home without his assistance. It is unclear whether she would be able to prohibit [Ed] from contact with [Respondent].
Consequently, because the trial court's finding that placement with A.S. would be contrary to Ed's best interests was supported by competent evidence, we cannot say the trial court's determination that Ed be placed with his foster parents, rather than with A.S., amounted to an abuse of discretion. See B.W.,190 N.C.App. at 337, 665 S.E.2d at 468 ("The findings in the instant case reflect that the court complied with N.C. Gen.Stat. § 7B-903(a) by properly considering and rejecting a placement with the grandparents. This assignment of error is overruled.").
Conclusion
For the reasons stated above, the orders of the trial court are affirmed.
AFFIRMED.
Chief Judge McGEE and Judge STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by respondent from adjudication order entered 16 June 2014 by Judge Michael Duncan and disposition order entered 8 September 2014 by Judge William Brooks in Alleghany County District Court. Heard in the Court of Appeals 26 May 2015.

A pseudonym is used throughout this opinion to protect the identity of the minor child and for ease of reading. See N.C.R.App. P. 3.1(b).