IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-396

Filed 02 May 2023

Durham County, No. 20 JA 116

IN THE MATTER OF: K.C.

Appeal by respondent-father from orders entered 21 October 2021 and 8 February 2022 by Judge Doretta L. Walker in Durham County District Court. Heard in the Court of Appeals 3 April 2023.

*Robin K. Martinek,* for Durham County Department of Social Services, petitioner-appellee.

*Alston & Bird LLP, by Kelsey L. Kingsbery and Michelle C. Prendergast, for the Guardian ad Litem.*

*Richard Croutharmel, for the father, respondent-appellant.*

WOOD, Judge.

Respondent-father appeals from the disposition order placing K.C. ("Katy")[1] in the temporary custody of the paternal aunt and uncle following the trial court's adjudication of Katy as a neglected juvenile. For the reasons stated herein, we vacate the disposition order and remand for further proceedings.

## I. Background

---

[1] A pseudonym agreed upon by the parties pursuant to N.C. R. App. P. 42(b).

Katy was born in January 2020. On 25 August 2020, Durham County Department of Social Services filed a petition alleging Katy to be a neglected juvenile. The petition alleged Katy and her mother[2] both tested positive for marijuana at Katy's birth, and that mother admitted to using cocaine during her pregnancy. Mother had a history of mental health, substance abuse, and domestic violence issues, as well as a history of housing instability. On 9 August 2020, mother was charged with driving while impaired and reckless endangerment after she fled the scene of an automobile accident. Following this incident, DSS and the parents established a safety plan for Katy whereby Katy would be placed with respondent-father, the non-offending parent, with whom she has had regular visits since birth. The only mention of Respondent in the petition states that he is the father of Katy and had regular visitation with her until she was placed with him pursuant to the safety plan. DSS did not seek non-secured custody of Katy.

On 15 October 2021, more than a year after the filing of the juvenile petition, the matter came on for adjudication. On 21 October 2021, the trial court entered an order adjudicating Katy to be a neglected juvenile. The dispositional hearing was held on 10 December 2021. **This is the first time the court contemplated removal of the child from the non-offending parent.** On 13 January 2022, the trial court entered a limited order placing Katy in the temporary custody of her

---

[2] Katy's mother is not a party to this appeal.

paternal aunt and uncle. The trial court entered the formal disposition order on 8 February 2022, wherein it formally placed Katy in the "temporary custody" of her paternal aunt and uncle and ordered Respondent to complete a parenting class with a domestic violence component, complete a domestic violence program for perpetrators, refrain from physically disciplining Katy, maintain contact with the social worker, maintain stable housing, maintain employment and income, refrain from using illegal substances, sign all necessary releases to allow the social worker to access service records, and ensure that all service providers have copies of the trial court's orders. He was granted up to three hours of weekly, unsupervised visitation with Katy. Respondent appeals.

## II. Discussion

On appeal, Respondent argues the trial court erred in placing Katy in the temporary custody of the paternal aunt and uncle where its determination that he acted inconsistently with his constitutional rights as a parent was not supported by the evidence or the findings of fact. Respondent's argument has merit.

We begin by noting that Respondent properly preserved this issue for our review.[3] Respondent had notice that DSS was recommending temporary custody of Katy be placed with the paternal aunt and uncle. At the dispositional hearing, he

---

[3] On 28 June 2022, DSS filed a motion to dismiss respondent's appeal on the ground that respondent had failed to preserve his sole argument on appeal for review. Petitioner's motion to dismiss is denied.

opposed DSS's recommendation, testified that he had the ability to care for Katy, and specifically requested the court to allow Katy to remain in his custody. *See In re B.R.W.*, 278 N.C. App. 382, 399, 863 S.E.2d 202, 216 (2021) (holding that the respondent-mother's challenge to the trial court's determination that she acted inconsistently with her protected status was preserved where she presented evidence of her ability to care for the children, opposed the recommendation of guardianship, and requested the trial court to reject the recommendation of guardianship), *aff'd*, 381 N.C. 61, 871 S.E.2d 764 (2022).

Here, the trial court determined that Respondent had "acted inconsistent[ly] with [his] constitutional right [as a] parent." Respondent initially contends that the trial court erred in labeling this determination as a finding of fact when it is a conclusion of law. We agree. Although the trial court characterized this determination as a finding of fact, it is a conclusion of law; and we review it accordingly. *See In re J.S.*, 374 N.C. 811, 818, 845 S.E.2d 66, 73 (2020) ("We are obliged to apply the appropriate standard of review to a finding of fact or conclusion of law, regardless of the label which it is given by the trial court."). "The trial court's legal conclusion that a parent acted inconsistently with his constitutionally protected status as a parent is reviewed de novo to determine whether the findings of fact cumulatively support the conclusion and whether the conclusion is supported by clear and convincing evidence." *In re I.K.*, 377 N.C. 417, 421, 858 S.E.2d 607, 611 (2021).

The Due Process Clause of the Fourteenth Amendment to the United States

Constitution protects "a natural parent's paramount constitutional right to custody and control of his or her children" and ensures that "the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody" or "where the parent's conduct is inconsistent with his or her constitutionally protected status." *Adams v. Tessener*, 354 N.C. 57, 62, 550 S.E.2d 499, 503 (2001). A parent's constitutionally protected interest

> in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on the presumption that he or she will act in the best interest of the child. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child.

*Price v. Howard*, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997). "[T]here is no bright line beyond which a parent's conduct" constitutes action inconsistent with their protected status. *Boseman v. Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 503 (2010). "Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents." *Price*, 346 N.C. at 79, 484 S.E.2d at 534-35. "[E]vidence of a parent's conduct should be viewed cumulatively." *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 267 (2003).

Here, the trial court relied on the following findings of fact to support its

conclusion that Respondent acted inconsistently with his constitutionally protected

right to parent Katy:

> 20. Starting in April 2021, [Katy] was staying with her [paternal aunt and uncle] on a consistent basis. In order to have a stable and consistent caregiver, [respondent] elected to have [Katy] stay with his sister . . . and her husband[.] She and her husband moved into a new apartment to ensure that [Katy] has a stable place to be at all times. [Respondent] is often in the home visiting his daughter and will spend the night there as well.
>
> 21. At the end of June 2021, [respondent] decided that he would provide the care and supervision to his daughter. He has been providing this care to [Katy] and allowing her to spend an occasional night with other family members.
>
> 22. In November 2021, [respondent] was arrested and charged with assault on a female. At the time, he was at home with a female who he said he was and was not in a relation[ship] with. According to [respondent], the altercation took place outside the home, while [Katy] and a three-year-old were in a back room alone and unsupervised. After that, the child was placed with [the paternal aunt and uncle]. Guilford County DSS conducted a kinship assessment of the [paternal aunt and uncle] and approved placement with them. They are in the process of getting [Katy] enrolled in daycare.
>
> . . . .
>
> 49. When [Katy] was placed in his home, [respondent] was employed full time with ABM Building Values, a commercial cleaning service, and resided in the home of the paternal grandmother in Guilford County. Both the paternal grandmother and [paternal aunt] assisted with childcare, provided clothing, and spent quality time with [Katy].
>
> 50. Around December 2020, [respondent] moved to his own place in Guilford County. At that time, he was still

employed with ABM Building Values; however, he was not working due to lack of business related to COVID. [Respondent] received unemployment benefits. [Respondent] also reported that he was an entrepreneur with a business that showcased his urban clothing line, the Wise Mark Company. [Respondent] reports he has been running his own business for three years.

. . . .

53. Since the filing of the petition in August 2020, [respondent] has lived in four different locations. He is currently living with his mother.

54. [Respondent] has a significant criminal history with convictions for drug-related crimes and assault on a female. Durham DSS was not aware of the criminal history until after [Katy] was already in the home and Alamance County DSS had approved the placement. Since the filing of the petition, [respondent] had to turn himself in to the Alamance County Jail for charges of communicating threats and larceny of a firearm. He was released later that day. [Respondent] also had pending charges for assault on a female with an ex-girlfriend as a victim. In November 2021, he was charged with assault on a female.

55. [Respondent] has a history of domestic violence.

56. The Court was disturbed by what she saw at [respondent's] house during the video testimony. [Respondent] wore a wife beater to court and his home was filled with [what appeared to be] dirty laundry.

57. The Court did not find [respondent's] description and downplay of the domestic violence incident credible.

58. [Respondent] reported that he would tote his daughter around in the car while delivering his product for his business. The Court finds that was inappropriate.

59. The Court is concerned that [respondent] continues to involve himself with women that results in domestic

violence.

Respondent challenges the portion of dispositional finding of fact 49 which provides that "[b]oth the paternal grandmother and [paternal aunt] assisted with childcare, provided clothing, and spent quality time with [Katy]" while Katy was placed in his care. The paternal aunt testified at the dispositional hearing that over the past year, while Katy was in Respondent's care, Katy would stay overnight in her home at least three days a week. Respondent would leave Katy with the paternal aunt "when he had things to do." An addendum to the August 2020 DSS court report, dated 13 October 2021, which was admitted into evidence at the dispositional hearing without objection, demonstrates that the paternal grandmother and paternal aunt "help[ed] with caring" for Katy. Katy was "often" with her paternal aunt due to Respondent's work schedule, and the paternal aunt reported to a DSS social worker that she had purchased clothes and food items while Katy was in her care. Providing babysitting services would qualify as assisting with childcare and spending quality time with the child. Thus, clear and convincing evidence supports finding of fact 49.

Respondent challenges the portion of dispositional finding of fact 54 pertaining to his criminal history and DSS's awareness of his criminal history as not being supported by the evidence. However, the August 2020 DSS court report, which was admitted into evidence at the dispositional hearing without objection, stated Respondent's criminal history of convictions for driving while license revoked, assault on a female, possession of marijuana, and possession of a firearm. An addendum to

the court report provides that DSS was not made aware of Respondent's criminal history until Katy was already in respondent's home and Respondent had a pending charge of assault on a female. Thus, Respondent's challenge to this finding fails. Although DSS became aware of Respondent's criminal history before its 15 October 2020 addendum to its report to the court, DSS did not seek nonsecure custody of Katy at any of the pretrial hearings or at the adjudication hearing on 15 October 2021.

Throughout the approximately fifteen months Katy was in the custody of Respondent, from the safety plan immediately preceding filing of the petition to the disposition hearing, the DSS court report and each addendum thereafter set forth the circumstances of the Respondent and Katy. DSS consistently reported Katy was doing well in the custody of the Respondent, that he was meeting all her needs, was utilizing family support when needed, and "is providing a safe home that [has] adequate supplies and space for his daughter." DSS consistently reported that Katy and Respondent have a "strong bond," and she is affectionate toward him and happy to see him. Each report, until the 13 October 2021 addendum, recommended Katy be placed in the custody of Respondent at disposition. That report recommended that Katy be placed in the temporary custody of the paternal aunt and uncle while simultaneously reporting that Respondent "is providing a safe home that [has] adequate supplies and space for his daughter." There was no allegation that Respondent was unable to meet Katy's needs or that she was at risk of any injury while in Respondent's care. *See In re Evans*, 81 N.C. App. 449, 452-54, 344 S.E.2d

325, 327 (1986) (The task at the initial "removal stage is to determine whether the child is *exposed* to a substantial risk of physical injury because the parent is unable to provide adequate protection.").

Next, Respondent argues that findings of fact 50, 53, 56, 57, and 58 constitute socioeconomic factors irrelevant to an analysis of whether a parent has acted inconsistently with their constitutionally protected status. It is well established that a parent's "socioeconomic status is irrelevant to a fitness determination." *Raynor v. Odom*, 124 N.C. App. 724, 731, 478 S.E.2d 655, 659 (1996) (citing *Jolly v. Queen*, 264 N.C. 711, 713-14, 142 S.E.2d 592, 595 (1965)).

> Socioeconomic factors that this Court has held do not show a parent's unfitness or acts inconsistent with constitutionally-protected status include *the propriety of the parent's place of residence, that the parents move frequently, that their house* at times lacked heat or *was not cleaned regularly,* their choice in spouse or babysitter, that the parent did not have relatives nearby to assist in caring for the child, *a history of being unable to maintain stable employment,* and *loss of a job*. While socioeconomic factors such as the quality of a parent's residence, job history, or other aspects of their financial situation would be relevant to the determination of whose custody is in the best interest of the child, those factors have no bearing on the question of fitness.

*Dunn v. Covington*, 272 N.C. App. 252, 265, 846 S.E.2d 557, 567 (2020) (emphasis added).

We reject respondent's contention that findings of fact 57 and 58 constitute findings regarding socioeconomic factors. They address Respondent's "description

and downplay" of the domestic violence incident that occurred in November 2021 and how Respondent would "tote" Katy around in his vehicle while working. In findings of fact 50, 53, and 56, however, the trial court found that Respondent was not working and receiving unemployment benefits around December 2020, had moved to four different locations since the filing of the juvenile petition in August 2020, was currently living with his mother, and had a messy home. These findings regard socioeconomic factors that potentially could reflect on the child's best interest but have no bearing on the issue of whether Respondent's conduct was inconsistent with his constitutional rights as a parent. The trial court inappropriately considered these factors, and we do not consider them here.

The trial court's remaining findings of fact demonstrate that Katy was placed in Respondent's custody in August 2020 and for approximately three months in 2021, Respondent elected to have Katy stay with the paternal aunt and uncle. He visited her regularly during this time, and at the conclusion of the three months, Respondent resumed the care and supervision of Katy. This short period of time Katy was with the paternal aunt and uncle was temporary and does not undermine respondent's constitutionally protected status. *See Price*, 346 N.C. at 83, 484 S.E.2d at 537 (stating that if a parent allows a party to have "custody of the child only for a temporary period of time" and then seeks custody at the conclusion of that period, the parent "would still enjoy a constitutionally protected status absent other conduct inconsistent with that status"). The other findings establish the following: (1) Respondent received

assistance from the paternal grandmother and aunt in caring for Katy; (2) Respondent had prior convictions for drug-related crimes, assault on a female, and a pending charge of assault on a female; (3) Respondent's pending charge arose from an incident that occurred in November 2021 wherein he is alleged to have assaulted a female outside his home while Katy was inside and unsupervised; and (4) Katy accompanied Respondent when he delivered merchandise for his business. The trial court did not make any findings about the effects that these findings might have on Katy or specific risks that might result, nor did the court find that the condition of the Respondent's home contributed to any particular risk of endangerment or injury to Katy.

Viewing Respondent's conduct cumulatively, we are unable to say that receiving support from family members in caring for Katy, having Katy accompany Respondent while he worked and conducted business, having prior criminal convictions (the dates, number, and effects of which are unknown), and the existence of an unproven domestic violence charge warrant forfeiture of Respondent's constitutionally protected status. Based on the record evidence, the trial court's findings of fact do not show that Respondent "fail[ed] to shoulder the responsibilities that are attendant to rearing a child." *Price*, 346 N.C. at 79, 484 S.E.2d at 534. There were no allegations in the petition or findings in the adjudication order that Respondent, the non-offending parent, has neglected the child, is unfit, or has acted inconsistently with his paramount constitutional right to custody of his child.

Therefore, his constitutionally protected rights remain intact at this juncture. To be clear, the disposition hearing is the *first* time the trial court contemplated removal of the child from the non-offending parent. The child was not in DSS custody, nor had she ever been placed in non-secured custody.

## III.   Conclusion

Accordingly, we are constrained to hold that the trial court's findings of fact are insufficient to support the trial court's conclusion that Respondent acted inconsistently with his paramount constitutionally protected status as a parent. The portion of the disposition order entered 8 February 2022 that removed Katy from the Respondent's custody and granted temporary custody of Katy to the paternal aunt and uncle is vacated, and the case is remanded to the trial court for further proceedings and entry of a new dispositional order. Because the disposition hearing occurred more than a year ago, the trial court may conduct a new disposition hearing for Katy.

VACATED AND REMANDED.

Judge COLLINS concurs.

Judge CARPENTER dissents by separate opinion.

CARPENTER, Judge, dissenting.

In my view, the trial court's finding of fact 61, stating that Respondent-Father acted inconsistent with his constitutional rights as a parent, was premature and unnecessary to the trial court's dispositional decision awarding temporary custody to relatives. I agree with the majority to the extent that finding of fact 61 is actually a conclusion of law, reviewable *de novo* on appeal. Nonetheless, this conclusion is only necessary and proper when making a permanent custody determination. *See In re D.M.*, 211 N.C. App. 382, 385, 712 S.E.2d 355, 357 (2011) (explaining the trial court could not award permanent custody without a finding that the respondent was unfit or had acted inconsistent with his constitutional rights as a parent). The proper standard of review for a trial court's disposition order is abuse of discretion; therefore, I believe the majority erroneously reviewed an improper and superfluous conclusion of law *de novo*. Because the trial court did not abuse its discretion in awarding temporary custody to relatives in its disposition order, I respectfully dissent.

## IV.    Standard of Review

It is well settled that North Carolina Appellate Courts review a trial court's dispositional choices—including temporary placement with a relative—for abuse of discretion. *In re A.P.W.*, 378 N.C. 405, 410, 861 S.E.2d 819, 826 (2021). "An abuse of discretion results where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (citation and quotation mark

omitted).

"The district court has broad discretion to fashion a disposition from the prescribed alternatives in N.C. Gen. Stat. § 7B-903(a), based upon the best interests of the child." *In re B.W.*, 190 N.C. App. 328, 336, 665 S.E.2d 462, 467 (2008) (citations omitted); *see also* N.C. Gen. Stat. § 7B-903(a)(4) (2021) (providing the trial court may "[p]lace the juvenile in the custody of a parent, relative, private agency offering placement services, or some other suitable person" as a dispositional alternative).

## V. Analysis

On appeal, Respondent-Father argues that because insufficient evidence supports the trial court's conclusion that he acted inconsistent with his constitutional rights as a parent, the trial court erred in placing Katy in the temporary custody of her paternal relatives. Our Court has previously rejected this constitutional argument, albeit in unpublished decisions, where the trial court's custody determination at the dispositional stage was temporary. *See In re B.S.*, 225 N.C. App. 654, 738 S.E.2d 453 (2013), 2013 N.C. App. LEXIS 156, at *4 (N.C. Ct. App. Feb. 19, 2013) (unpublished) (holding the trial court's "finding of fact at disposition that respondent was unfit and had acted inconsistently with his constitutionally protected parental rights was both *unnecessary and improper* at [the dispositional] stage of the proceedings") (emphasis added); *In re E.B.*, 241 N.C. App. 656, 775 S.E.2d 693 (2015), 2015 N.C. App. LEXIS 481, at *7 (N.C. Ct. App. June 16, 2015) (unpublished) (explaining the trial court was not required to make a finding that the respondent

was an unfit parent or had acted inconsistently with his constitutionally protected parental rights because the trial court awarded only temporary custody at the dispositional stage); *see also In re J.W.M.,* 283 N.C. App. 470, 2022-NCCOA-354, ¶ 17–19 (unpublished) (rejecting the respondent-father's argument that the trial court should have engaged in an analysis of his constitutionally protected parental rights at the dispositional stage where it awarded temporary custody of the juvenile to the department of social services). Respondent-Father challenges several findings of fact but does not contend the trial court abused its discretion.

Here, the trial court made findings of fact regarding: Katy's need for stability and more adequate care and supervision in her placement; Respondent-Father's criminal and domestic violence history—including one domestic violence incident that occurred while Katy was home unsupervised; the trial court's concern for Respondent-Father's continued domestic violence; and Respondent-Father's four home changes since the petition was filed. The trial court also considered Katy's placement options, including being returned to Respondent-Father's home. Based on its findings of fact, the trial court concluded it was in Katy's best interest to be placed in the temporary custody of relatives. I disagree with the majority that the trial court was required to make specific findings at this stage of the proceedings regarding a risk of substantial injury posed by Respondent-Father's home environment. In the 21 October 2021 adjudication order, the trial court adjudicated Katy to be neglected, and Respondent-Father did not appeal from this order.

In light of the trial court's findings, I cannot conclude the trial court abused its discretion in its award of temporary custody to Katy's relatives at this stage of the juvenile proceeding. *See In re A.P.W.*, 378 N.C. at 410, 861 S.E.2d at 826. Accordingly, I would affirm the disposition order.

## VI.    Conclusion

The trial court's disposition order, including its award of temporary custody, was not "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *See In re T.L.H.*, 368 N.C. at 107, 772 S.E.2d at 455.  Therefore, I would affirm the disposition order.