HUNTER, JR., Robert N., Judge.
Respondent-father appeals the trial court's 18 May 2016 adjudication order and 6 July 2016 disposition order concluding his daughter B.N.M. ("Brenna")[1] was a neglected and dependent juvenile, it was in Brenna's best interest to remain in the custody of the Watauga County Department of Social Services ("DSS"), and DSS was not required to employ reasonable reunification efforts with Respondent-father. After review, we affirm in part and reverse in part.
I. Facts and Background
On 14 March 2016, DSS filed a petition alleging Brenna was a neglected and dependent juvenile. In its affidavit, DSS alleged on 11 March 2016, one of its agents responded to a report Respondent-father struck Brenna in the face and head on several occasions. Brenna told the responding agent Respondent-father previously punched her, strangled her, and threatened her with physical violence. Additionally, Brenna told the agent she was "extremely fearful of going back into her home[.]" Based on Brenna's statements and the fact that Brenna "has been in DSS custody in the past due to similar concerns of domestic violence," DSS alleged it was contrary to her welfare to remain in Respondent-father's custody.
The Watauga County District Court issued an order for nonsecure custody on the same day, finding a reasonable factual basis to conclude Brenna had suffered physical injury and was exposed to a substantial risk of physical injury in Respondent-father's custody. The court ordered Brenna placed in nonsecure custody with DSS, and set an initial hearing to determine the need for continued non-secure custody for 18 March 2016.
On 18 March 2016, the court entered an order on the need for continued nonsecure custody, finding there was a reasonable factual basis to conclude Brenna suffered physical injury, was exposed to a substantial risk of physical injury in Respondent-father's custody, and nonsecure custody was the only reasonable means to protect her. The court concluded DSS made reasonable efforts to prevent and eliminate the need for nonsecure custody and held Brenna would remain in DSS custody. The court set an adjudication hearing for 5 April 2016.
Following the adjudication hearing, the trial court entered an adjudication and interim disposition order on 18 May 2016. Brenna's mother, as the "non-offending parent," stipulated to the trial court's findings of fact. The court made the following relevant findings of fact: on 9 March 2016, Respondent-father struck Brenna in the head, face, and nose, causing a knot on her forehead; Brenna contacted DSS after the incident; Respondent-father's violent behavior towards Brenna had been regularly occurring for several months; Brenna and her brother had previously been in DSS custody due to domestic violence between Respondent-father and the children's mother; Respondent-father was verbally abusive to Brenna during a post-petition incident; Respondent-father claimed Brenna was disrespectful and disobedient; Brenna had suicidal ideation as a result of her father's behavior; Respondent-father had previously been imprisoned for assaulting the mother; Respondent-father's testimony was disrespectful, vulgar, and profane; and Respondent-father boasted of his temper and propensity for violence. Based on the stipulated facts, the court concluded Brenna was both a neglected and dependent juvenile. It also rendered an interim disposition that it was in Brenna's best interest to remain in the custody of DSS.
The trial court entered a separate disposition order on 6 July 2016. The trial court incorporated the findings of fact Brenna's mother stipulated to in the adjudication order. Based on these findings, the trial court concluded it was in Brenna's best interest to remain in DSS custody. Pursuant to N.C. Gen. Stat. § 7B-901(c), the court ordered reasonable reunification efforts with Respondent-father were no longer required. In support of its ruling, the court found "aggravated circumstances exist because Respondent Father has committed or encouraged the commission of or allowed the continuation of, chronic physical or emotional abuse that has increased the enormity and/or added to the injurious consequences of [Brenna's] neglect" while in his care. Finally, the trial court ordered Respondent-father to comply with a case plan.
On 27 July 2016, Respondent-father entered notice of appeal from the 18 May 2016 adjudication order and the 6 July 2016 dispositional order.
II. Jurisdiction
Although Respondent-father filed a timely notice of appeal, he failed to attach a certificate of service indicating notice had been served upon the parties as required by North Carolina Rule of Appellate Procedure 3.1(a). Respondent-father submitted a petition for writ of certiorari to this Court on 10 November 2016, addressing the error and requesting this Court grant the writ pursuant to Rules of Appellate Procedure 2 and 21(a)(1). In support of his petition, Respondent-father submitted an affidavit signed by his attorney stating that although he failed to attach a certificate of service to the notice of appeal, he served the notice of appeal by hand-delivery upon counsel for each of the parties on the date the notice was filed.
While defects in the notice of appeal and its service upon the parties may render "this Court jurisdictionally infirm ... the service of the Notice of Appeal is a matter that may be waived by the conduct of the parties." Hale v. Afro-American Arts Intern. Inc. , 110 N.C. App. 621, 625, 430 S.E.2d 457, 459-60 (Wynn, J., dissenting), rev'd per curiam per the dissent , 335 N.C. 231, 436 S.E.2d 588 (1993). Much like the service of the complaint, where the due process requirements of notice may be waived by the defendant's voluntary appearance in court, B-W Acceptance Corp. v. Spencer , 268 N.C. 1, 10, 149 S.E.2d 570, 577 (1966), service of the notice may be waived if the opposing party does not raise the issue "by motion or otherwise" or participates "without objection in the appeal." Hale , 335 N.C. at 232, 436 S.E.2d at 589.
Here, no party has moved to dismiss the appeal or otherwise raised the issue of notice. Further, all parties involved submitted briefs addressing the merits of the case. As a result, we hold the issue of service of notice has been waived. Consequently, as there is no fault in the notice of appeal itself, Respondent-father's appeal is properly before this court pursuant to N.C. Gen. Stat. § 7B-1001(a)(3) (2015). We deny Respondent-father's petition for writ of certiorari as unnecessary.
III. Standard of Review
This Court reviews a trial court's adjudication of neglect and dependency to determine whether (1) the findings of fact are supported by "clear and convincing evidence," and (2) "the legal conclusions are supported by the findings of fact[.]" In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007). "Clear and convincing evidence is evidence which should fully convince." In re J.A.G. , 172 N.C. App. 708, 712, 617 S.E.2d 325, 329 (2005) (citation and internal quotation marks omitted). Where such evidence exists, "the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." T.H.T. , 185 N.C. App. at 343, 648 S.E.2d at 523 (citation omitted).
We review a dispositional order "to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M. , 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007) (citation omitted).
IV. Analysis
A. Dependency
Respondent-father first challenges the trial court's adjudication of dependency, contending the findings of fact are not sufficient to support the trial court's conclusion of law that Brenna was a dependent juvenile.
Our juvenile code defines a dependent juvenile as one "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2015). In determining whether a juvenile is dependent, the trial court is required to "address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M. , 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." In re B.M. , 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007). Respondent-father argues the trial court erred in adjudicating Brenna dependent because the court's findings of fact fail to address both parents' ability to provide care or supervision and the availability of alternative care arrangements. We agree.
None of the trial court's findings address either prong required to support an adjudication of dependency. The only factual findings in the trial court's adjudication order are found in finding of fact number 10, which consists of 11 bullet points. The bullet points detail Respondent-father's violence towards Brenna, which arguably affected his ability to provide care and supervision for her, but make no mention of the mother's ability to parent, and lack any finding regarding the availability of alternative care arrangements.
DSS and the guardian ad litem ("GAL") suggest Respondent-father's testimony at the dependency hearing regarding Brenna's mother is sufficient to support the adjudication. While there may indeed be competent evidence in the record to suggest Brenna's mother lacked the ability to provide care and supervision, the trial court made no such finding of fact. Without a finding relating to Brenna's mother, the trial court's conclusion that both "Respondent Parents are unable to provide for the care or supervision" of the child is not supported by clear and convincing evidence, and must be reversed.
We also conclude that, contrary to DSS's and the GAL's suggestions, the mother's stipulations at adjudication do not cure the defect. This Court has recognized that "stipulations are judicial admissions and are therefore binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it and relieving the other party of the necessity of producing evidence to establish an admitted fact." In re A.K.D. , 227 N.C. App. 58, 60, 745 S.E.2d 7, 9 (2013) (citation omitted). Therefore, while the stipulation may have prevented the mother from challenging the findings, it does not prevent Respondent-father from challenging the findings. Moreover, while the parties may stipulate to the findings of fact, a stipulation to a conclusion of law is invalid. Id. at 60, 745 S.E.2d at 9. Therefore, the mother's stipulation that Brenna was dependent is not binding on this Court. See id. at 60, 745 S.E.2d at 9.
Because the trial court's order lacked the necessary findings to support dependency, the trial court's conclusion that Brenna was dependent is in error. See B.M. , 183 N.C. App. at 90, 643 S.E.2d at 648 (reversing the trial court's order where it failed to make any findings regarding the availability of alternative child care arrangements). Based on the foregoing, we are compelled to reverse the trial court's adjudication of dependency.
B. Neglect
Next, Respondent-father challenges several of the trial court's adjudicatory findings of fact that were used in support of its adjudication of neglect. Respondent-father does not challenge the trial court's conclusion that Brenna was neglected, but nonetheless argues that any unsupported findings of fact must be stricken from the order due to negative collateral consequences. Because some of the challenged findings are indeed unsupported by clear and convincing evidence, we strike them from the order without extending the collateral consequences doctrine to this context.
"In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms , 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). If competent evidence supports the findings, they are "binding on appeal." In re McCabe , 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citations omitted). We review the challenged findings in turn.
First, Respondent-father challenges the trial court's finding which describes his behavior when Brenna attempted to retrieve some of her belongings from his home:
After filing the Petition, Social Worker Jennifer Smith and others accompanied the Juvenile to the Respondent Father's home to collect her personal belongings and to transfer the Juvenile to her foster home placement. The Respondent Father agreed to stay away until they left. However, the Respondent Father returned before the Juvenile and Social Worker Smith could complete the job. The Respondent Father became verbally abusive; cursing and threatening the Juvenile, Social Worker Smith, and the others that were present. The Respondent Father was screaming obscenities to the Juvenile, Social Worker Smith and the others that were present, placing them in fear for their safety[.]
He argues that this finding is improper because it relates to an event that occurred after the filing of the petition.
Respondent-father is correct in his assertion that "post-petition evidence generally is not admissible during an adjudicatory hearing for abuse, neglect, or dependency." In re V.B. , 239 N.C. App. 340, 344, 768 S.E.2d 867, 869 (2015). "This is because the purpose of an adjudicatory hearing is to determine only 'the existence or nonexistence of any of the conditions alleged in a petition.' " Id. at 344, 768 S.E.2d at 869-70 (quoting N.C. Gen. Stat. § 7B-802 (2015) ). Respondent-father, however, did not object to the introduction of this evidence at the hearing. Therefore, he has failed to preserve this issue for appeal. See N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make...."); In re A.S. , 190 N.C. App. 679, 689, 661 S.E.2d 313, 319 (2008) (where neither parent objected to reports introduced at trial, the parents' challenges to evidence derived from the reports were not preserved for appellate review), aff'd per curiam , 363 N.C. 254, 675 S.E.2d 361, reh'g denied , 363 N.C. 381, 678 S.E.2d 231 (2009). Therefore, we decline to strike this finding of fact from the adjudication order.
Second, Respondent-father challenges three of the trial court's findings of fact that describe: (1) an incident during which Respondent-father struck Brenna in the head, face, and nose, and which precipitated DSS intervention; (2) Respondent-father's previous violent behavior towards Brenna; and (3) Brenna's suicidal ideation and threats to commit suicide. Respondent-father claims that these findings are based solely on social worker Jennifer Smith's testimony, which consisted of out-of-court statements made by Brenna and Respondent-father. He argues that the statements are inadmissible hearsay, and therefore, the findings are not supported by competent evidence.
However, Respondent-father has again waived appellate review of his evidentiary challenge. Ms. Smith's testimony accounts for over twenty-five pages in the transcript, and it appears that counsel made only two objections during her testimony. Neither objection was related to the out-of-court statements of Respondent-father or Brenna. Therefore, any hearsay objections to Ms. Smith's testimony were waived. See N.C.R. App. P. 10(a)(1) ; In re F.G.J. , 200 N.C. App. 681, 693, 684 S.E.2d 745, 753-54 (2009) (holding where the parties failed to raise an objection on hearsay grounds at trial, "any objection [was] waived, and the testimony must be considered competent evidence"). Accordingly, we decline to strike the challenged findings of fact from the adjudication order.[2]
Third, Respondent-father challenges the trial court's finding of fact that "[b]oth the Juvenile and the Juvenile's sibling have previously been in the custody of [DSS] due to violence between the Respondent Mother and the Respondent Father." Respondent-father appears to concede that Brenna and her brother had previously been in foster care, but argues there was no evidentiary basis for the trial court to find their previous foster care stay was due to violence between the parents. After reviewing the record, we agree.
Ms. Smith testified that Brenna had been in foster care three previous times, and from this testimony, the trial court could reasonably infer that she was in DSS custody. Similarly, Respondent-father admitted to "domestic violence between me and her mom," and estimated there had been fifty or sixty domestic violence incidents between he and his ex-wife. Thus, the trial court also had sufficient evidence to find that he previously engaged in domestic violence with the mother. Nonetheless, none of the witnesses linked the domestic violence to Brenna's stay in foster care. While the trial court certainly had sufficient evidence to make these two independent findings, there is no evidence in the record as to why the children were previously taken into DSS custody. Furthermore, none of the witnesses testified as to a time frame for the parents' domestic violence or Brenna's stay in foster care; therefore, the trial court could not make the inference based on temporal proximity between the two events. Accordingly, we strike the portion of this finding that states "due to violence between the Respondent Mother and the Respondent Father."
Fourth, Respondent-father challenges the trial court's findings that (1) his testimony was best characterized as "disrespectful, vulgar and profane," and (2) he "boasted of his temper and his propensity for violence" at the hearing. As to the first of these two challenges, Respondent-father appears to suggest that the trial court's finding was improper because Respondent-father quoted his own out-of-court statements when using profane language in court. We disagree. We note that the trial court's finding regarding Respondent-father's testimony was essentially a credibility determination, and it is not our duty to re-weigh the credibility of the witnesses and substitute our judgment for that of the trial court. See In re Hughes , 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject."). While Respondent-father quoted profane out-of-court statements on multiple occasions, he also used profane statements at least two other times during his testimony-once in describing the type of person he is, and once in describing his son. Respondent-father was not quoting out-of-court statements in either instance. Therefore, we hold the trial court did not err in describing his testimony as disrespectful, vulgar, and profane.
The finding that Respondent-father boasted about his temper is likewise supported by the evidence. He twice acknowledged that he has a bad temper, stated that he knew "the difference between my children and a stranger or a jerk in the street that's begging to be beat up[,]" and described having "laid out" one of his employees. As the trial court was in the best position to judge Respondent-father's demeanor, we decline to second-guess the trial court's characterization of Respondent-father's testimony. See id. at 759, 330 S.E.2d at 218. Accordingly, we reject Respondent-father's final challenges to the adjudicatory findings of fact.
C. Reasonable Reunification Efforts
Next, Respondent-father challenges the trial court's dispositional determination as a matter of law that reasonable reunification efforts were not required pursuant to N.C. Gen. Stat. § 7B-901(c). Section 7B-901(c)(1), in pertinent part, states that "the court shall direct that reasonable efforts for reunification as defined in G.S. 7B-101 shall not be required" if the trial court makes the following finding of fact:
(1) A court of competent jurisdiction has determined that aggravated circumstances exist because the parent has committed or encouraged the commission of, or allowed the continuation of, any of the following upon the juvenile:
....
b. Chronic physical or emotional abuse.
....
f. Any other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect.
N.C. Gen. Stat. § 7B-901(c)(1)(e)-(f) (2015). We recently held that in order to give meaning to the statutory language in Section 7B-901(c), the finding of an aggravating circumstance must have been made in a previous court order, not the disposition order in which the trial court orders reunification efforts to cease. We explained:
[T]he dispositional court must make a finding that "[a] court of competent jurisdiction has determined" that the parent allowed one of the aggravating circumstances to occur. We conclude that the language at issue is clear and unambiguous and that in order to give effect to the term "has determined," it must refer to a prior court order. The legislature specifically used the present perfect tense in subsections (c)(1) through (c)(3) to define the determination necessary. Use of this tense indicates that the determination must have already been made by a trial court-either at a previously-held adjudication hearing or some other hearing in the same juvenile case, or at a collateral proceeding in the trial court. The legislature's use of the term "court of competent jurisdiction" also supports this position. Use of this term implies that another tribunal in a collateral proceeding could have made the necessary determination, so long as it is a court of competent jurisdiction.
We further find that the legislature's use of a contrasting verb tense in the main body of Section 7B-901(c) supports our statutory interpretation. Rather than using the present perfect tense, the main body states that the trial court "shall direct " reunification efforts to cease if the court "makes written findings of fact." N.C. Gen. Stat. § 7B-901(c) (emphasis added). Had the legislature intended for the trial court to make the determination at a disposition proceeding, the verb tense used in subsection (1) would have mirrored that of the main body of Section 7B-901(c)....
In re G.T. , --- N.C. App. ----, ----, 791 S.E.2d 274, 279 (2016).[3] In G.T. , the trial court attempted to cease reunification efforts based on a finding of chronic or toxic exposure to controlled substances pursuant to N.C. Gen. Stat. § 7B-901(c)(1)(e). We held
if a trial court wishes to cease reunification efforts pursuant to N.C. Gen. Stat. § 7B-901(c)(1)(e), it must make findings at disposition that a court of competent jurisdiction has already determined that the parent allowed the continuation of chronic or toxic exposure to alcohol or controlled substances that causes impairment of or addiction in the juvenile.
Id. at ----, 791 S.E.2d at 279. Because the trial court's orders lacked the necessary findings, we reversed the portion of the disposition order that directed reunification efforts to cease. Id. at ----, 791 S.E.2d at 279.
Here, the trial court's disposition order made the following finding:
Pursuant to N.C.G.S. 7B-901(c), the Court [directs] that reasonable efforts for reunification of the Juvenile with the Respondent Father, as defined in N.C.G.S. 7B-101 et seq., shall not be required, and in support of the relief of efforts to reunify the Respondent Father with the Juvenile, the Court makes the written findings of fact that the Court has determined that aggravated circumstances exist because the Respondent Father has committed or encouraged the commission of, or allowed the continuation of chronic physical or emotional abuse that has increased the enormity and/or added to the injurious consequences of the Juvenile's neglect while in the care of the Respondent Father.
Thus, the trial court found that reunification efforts were not necessary due to the aggravating circumstances of chronic abuse and "[a]ny other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect." See N.C. Gen. Stat. § 7B-901(c)(1)(b), (f) (2016). However, the findings in support of the aggravating circumstances were not made in a previous order by a court of competent jurisdiction. The trial court's adjudication order makes no finding that Brenna was abused; indeed, abuse was not even alleged in the juvenile petition. Nor does the adjudication order contain a finding that Respondent-father engaged in conduct that increased the enormity or added to the injurious consequences of the abuse or neglect. Therefore, the trial court did not have a basis for concluding, at disposition, that reasonable reunification efforts were not required. Accordingly, we must reverse that portion of the trial court's disposition order.
D. Case Plan
Although we reverse the trial court's conclusion that reunification efforts are no longer required, we recognize that a question regarding Respondent-father's case plan may arise again after remand. Thus, we proceed to examine Respondent-father's final challenge to the disposition order.
Respondent-father claims that the trial court erred in ordering him to comply with a case plan while at the same time directing that reasonable efforts at reunification were no longer required. Respondent-father argues that the goal of a case plan is reunification and that the two directives are therefore contradictory and internally inconsistent.
"The district court has broad discretion to fashion a disposition from the prescribed alternatives in N.C. Gen. Stat. § 7B-903(a), based upon the best interests of the child." In re B.W. , 190 N.C. App. 328, 336, 665 S.E.2d 462, 467 (2008) (citation omitted). "We review a dispositional order only for abuse of discretion. An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." Id. at 336, 665 S.E.2d at 467 (internal citations and quotation omitted).
After reviewing the disposition order, we find no abuse of discretion in the trial court's decision to simultaneously order Respondent-father to comply with a case plan and cease reunification efforts. To begin, our Juvenile Code specifically authorizes the trial court to combine several dispositional alternatives, as well as concurrent permanent plans, even if the dispositions or plans are seemingly contradictory. See N.C. Gen. Stat. §§ 7B-903(a), 7B-906.2(a) (2015). The trial court also has a certain amount of authority over the parent of a child who is adjudicated abused, neglected, or dependent. See N.C. Gen. Stat. § 7B-904. Therefore, it follows that the trial court, in its discretion, would be authorized to order a parent to obtain services, even if the services appear to contradict the juvenile's disposition.
Additionally, even if DSS is relieved of reunification efforts, a parent could still work towards reunification on his own, without assistance from DSS. Although the cessation of reunification efforts often leads to the filing of a petition to terminate parental rights, it is feasible for a parent to work towards reunification and advocate for a change back to reunification as the permanent plan at the next permanency planning hearing. See N.C. Gen. Stat. §§ 7B-906.1, 7B-906.2 (2015). Moreover, if DSS does indeed pursue termination of parental rights, a parent's compliance with a case plan would certainly become relevant. Based on the foregoing, we find no error in the trial court's decision to order Respondent-father to comply with a case plan while simultaneously concluding that reunification efforts were no longer necessary.
V. Conclusion
In conclusion, we reverse the trial court's adjudication of dependency. We also strike part of one finding of fact from the adjudication order as specified above. We affirm the remainder of the adjudication order. As to the disposition order, we reverse the trial court's conclusion that reasonable efforts at reunification with Respondent-father were no longer required. We affirm the remainder of the order.
REVERSED IN PART; AFFIRMED IN PART.
Report per Rule 30(e).
Judges ELMORE and ZACHARY concur.

A pseudonym is used to protect the identity of the juvenile and for ease of reading.

We note "plain error review is limited to criminal cases and is not applicable to civil cases." In re L.M.C., 170 N.C. App. 676, 678, 613 S.E.2d 256, 257 (2005).

G.T. has been appealed to the North Carolina Supreme Court (420A16). However, in the absence of a stay, this Court's mandate remains in effect pending the Supreme Court's opinion. See N.C.R. App. P. 23(b) (allowing the parties to petition the Supreme Court for a writ of supersedeas to stay enforcement of this Court's opinion when a notice of appeal of right or a petition for discretionary review has been or will be filed).