**IN RE B.W.**

[190 N.C. App. 328 (2008)]

IN THE MATTER OF: B.W., A MINOR CHILD

No. COA07-1579

(Filed 6 May 2008)

**1. Child Abuse and Neglect— statements by attorney—not evidentiary—not prejudicial**

In a hearing adjudicating child abuse and neglect and the cessation of reunification efforts with the parents, any error in allowing statements by an attorney regarding pending criminal charges was not prejudicial because the trial court's finding on the issue was not necessary to its disposition.

**2. Child Abuse and Neglect— findings concerning grandparents—supported by evidence**

In a hearing adjudicating child abuse and neglect and the cessation of reunification efforts with the parents, the evidence supported the trial court's findings concerning the grandparents' unwillingness to acknowledge the nature and source of the child's injuries or to deny respondent (the mother) access to the child if the child was placed in their home.

**3. Child Abuse and Neglect— infant's injuries—aggravated circumstances**

The serial infliction of multiple fractures of the skull, leg, and ribs upon a prematurely born and malnourished infant during the first eight weeks of life qualifies as "aggravated circumstances" under N.C.G.S. § 7B-101(2).

**4. Child Abuse and Neglected— child not placed with grandparents—no abuse of discretion**

The trial court did not abuse its discretion by not ordering that a neglected and abused child be placed with his maternal grandparents. Its findings reflected that the court complied with N.C.G.S. § 7B-903(a) by properly considering and rejecting a placement with the grandparents.

**5. Child Abuse and Neglect— reunification efforts ceased— aggravating circumstances—no abuse of discretion**

The trial court's decision to cease reunification efforts was supported by the necessary finding under N.C.G.S. § 7B-507(b)(2) where the court determined that the child's injuries constituted an aggravated circumstance under N.C.G.S. § 7B-101(2). Nothing

**IN RE B.W.**

[190 N.C. App. 328 (2008)]

in the statute requires another court to find aggravated circumstances before reunification efforts are stopped. There was no abuse of discretion in ceasing reunification efforts given respondent's lack of concern for the child and the lack of an inclination to come to terms with the gravity of the abuse he suffered while in her care.

Appeal by respondent from order entered 25 September 2007 by Judge C. Thomas Edwards in Catawba County District Court. Heard in the Court of Appeals 14 April 2008.

*Lauren Vaughan for petitioner-appellee.*

*Melanie Steward Cranford for Guardian ad Litem.*

*Rebekah W. Davis for respondent-appellant.*

BRYANT, Judge.

Respondent K.P.,[1] mother of the minor child B.W., appeals from an order adjudicating the child an abused and neglected juvenile and ceasing efforts to reunify him with his parents. Respondent-father S.W. is not a party to this appeal.

*Facts and Procedural History*

The Catawba County Department of Social Services (DSS) obtained non-secure custody of B.W. on 11 May 2007, after an examination at Frye Medical Center revealed injuries consistent with child abuse, including cuts, bruises, bite marks, a fractured skull, and multiple rib and leg fractures of varying ages. The minor child was less than eight weeks old and had been in his parents' care since leaving the hospital after his premature birth at thirty-six weeks' gestation. DSS filed a juvenile petition alleging abuse and neglect on 11 May 2007.

At an adjudicatory hearing held 27 August 2007, respondents stipulated that B.W. had suffered "a skull fracture and multiple fractures of varying ages to his ribs and legs[,]" as alleged by DSS. They further stipulated the following:

It is the opinion of Dr. David Berry of Frye Regional Medical Center, to a reasonable degree of medical certainty that these injuries occurred on multiple occasions and were caused by

---

1. Initials have been used throughout to protect the identity of the juvenile.

**IN RE B.W.**

[190 N.C. App. 328 (2008)]

> chest squeezing and rough handling of [the] minor child. Dr. Berry has noted that these findings are suggestive of abuse. The parents have related no events which could have caused the child's injuries.
>
> The minor child is the only child of his parents and has been in their care and custody since [he] was born. Ms. Pearl Morton, a relative of the father, is the only other person residing in the dwelling. The parents report that [she] occasionally has acted as caretaker for the child.
>
> At present, the parents of the minor child do not have their own independent stable housing. The parents and child had been residing in [Morton's] home . . . .

Based on these undisputed findings, the court concluded that the minor child was abused and neglected within the meaning of N.C. Gen. Stat. § 7B-101(1), (15) (2007).

At disposition, the court heard testimony from forensic psychologist Dr. H.D. Kilpatrick, an expert in child custody and maltreatment who performed forensic evaluations of the parents; pediatric nurse practitioner Elizabeth Osbahr, FNP, (Ms. Osbahr) who examined B.W. at the Children's Advocacy Center; DSS investigator Shannon Roberts; and L.P. (the grandmother), B.W.'s maternal grandmother. The court received written reports from Dr. Kilpatrick, Ms. Osbahr, DSS and the Guardian ad Litem, as well as the minor child's medical records from Frye Regional Medical Center. Neither parent testified. Counsel for respondent-father informed the court that she had advised her client not to testify, in light of the criminal charges pending against him.

In its dispositional findings, the court described the multiple injuries observable on B.W. at the time DSS received a child protective services report on 10 May 2007. The court found that the parents "declined having knowledge of these abrasions and bruising, . . . except for the cut on the nose which reportedly occurred when the father dropped a telephone on the less-than-two-month-old child's head." It then listed the child's internal injuries, including a "closed fracture of the skull, subarachnoid subdural and extradural hemorrhage," posterior fractures of the 5th, 6th, 7th, and 8th ribs and anterior fractures of the 4th, 5th, and 6th ribs of varying ages, a closed fracture of the upper tibia, and a fractured fibula. The court noted that the minor child was also diagnosed "to be malnourished, under-

**IN RE B.W.**

[190 N.C. App. 328 (2008)]

weight, and to suffer from Failure to Thrive," and that he "demonstrated a pain response to palpations of the chest and skull." The medical evidence was found by the court to be "consistent with B[.W.] having suffered physical abuse on multiple occasions."

Based on the results of their psychological evaluations, the court found that "[n]either parent acknowledged or suggested that B.[W.] had experienced pain or suffering" as a result of his injuries. Nor had either parent expressed empathy or concern for the child at any time during their respective interviews with Dr. Kilpatrick. The psychological tests administered to the parents failed to "disclose any valid results as a result of the parents' attempt to present themselves in the most favorable light." In addition to describing respondent as "complacent and nonreactive" to questions about the nature and source of B.W.'s injuries, Dr. Kilpatrick averred "that the flat affect, and lack of empathy, [and] the defensive and inconsistent responses were problematic for both parents." Deeming "not viable" any "suggestion that B[.W.] did not suffer pain and that his injuries were caused by someone other than either parent[,]" the court found that "efforts to reunify B.[W.] with the . . . parents would clearly be futile and inconsistent with [his] health, safety and need for a permanent home[.]"

The court ordered that B.W. remain in DSS custody and approved his continued placement with his foster family. Concluding that "[t]he injuries sustained by this child constitute aggravated circumstances as defined by N.C. Gen. Stat. § 7B-101(2) [(2007),]" and that "[f]urther efforts to reunify the child with either parent would clearly be futile and inconsistent with [his] need for a safe permanent home with in [sic] a reasonable period of time[,]" the court ordered that further efforts to reunify B.W. with the parents cease. It separately found that placing the minor child with his maternal grandparents would be "contrary to [his] best interest[,]" in light of "the parents' and grandparents' unwillingness to consider or explain the source of the [child's] injuries." The court noted that such a placement would also "place[] the maternal grandparents in the untenable position of having to exclude their daughter from their home for the next seventeen and a half years in order to provide any hope of safety to this child." Respondent appeals.

---

Respondent raises three issues on appeal: (I) Whether the trial court's findings numbered 29, 30, 34 and 35 are supported by competent evidence; (II) Whether the trial court abused its discretion by declining to place the child with the maternal grandparents; and (III)

Whether the trial court's conclusion to cease reunification efforts is supported by competent evidence. For the reasons given below, we affirm the order of the trial court.

*I*

On appeal, respondent challenges four of the district court's dispositional findings of fact. Under the Juvenile Code, the court must support its disposition in an abuse and neglect proceeding with "appropriate findings[,]" N.C. Gen. Stat. § 7B-905 (2007), based on "credible evidence presented at the hearing." *In re K.S.*, 183 N.C. App. 315, 323, 646 S.E.2d 541, 545 (2007) (quotation omitted). "The standard of review that applies to an assignment [of error] challenging a dispositional finding is whether the finding is supported by competent evidence." *In re C.M.*, 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007) (citations omitted). A finding based upon competent evidence is " 'binding on appeal, even if there is evidence which would support a finding to the contrary.' " *K.S.*, 183 N.C. App. at 323, 646 S.E.2d at 545 (quoting *In re J.S.*, 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004)).

[1] Respondent first excepts to finding number 29 that "[t]he parents have been indicted for felony child abuse charges" as a result of B.W.'s injuries. She notes that the court heard no evidence regarding such charges, which were "mentioned for the first time" by respondent-father's counsel. The transcript reflects that the father's counsel asked the court not to cease reunification efforts prior to the resolution of the "criminal trial that's getting ready to occur." The court then engaged counsel in the following exchange:

THE COURT: In—in—in where, ma'am? In what?

[COUNSEL]: They have been indicted.

THE COURT: They who?

[COUNSEL]: The parents.

THE COURT: Your parents, the parents that you and [respondent's counsel] represent?

[COUNSEL]: Yes.

THE COURT: Have criminal charges pending? Is that what you're saying?

[COUNSEL]: Yes, Your Honor.

Respondent's own counsel later reiterated the fact of the parents' indictment in his argument to the court, as follows:

> [W]e think it's way too early in the process to cease [re]unifica-tion of the parents. . . . They—they have been indicted. You know who knows how long it'll be before that case is actually tried or dealt with in Superior Court[.]

We agree with respondent "that statements by an attorney are not considered evidence[,]" *K.S.*, 183 N.C. App. at 323, 646 S.E.2d at 545 (quotation and alteration omitted), and that no evidence regarding the indictments was introduced at the hearing. Assuming, *arguendo*, that her counsel did not stipulate to the existence of the indictments, however, we do not believe that the court's unsupported finding on this issue was necessary to its disposition. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) ("[E]rroneous findings unneces-sary to the determination do not constitute reversible error."). The court made the additional, uncontested finding that "[t]he suggestion that . . . [B.W.']s injuries were caused by someone other than either parent here today is not viable." Accordingly, because any error by the court was harmless, we overrule this assignment of error. *Id.*; *In re Beck*, 109 N.C. App. 539, 548, 428 S.E.2d 232, 238 (1993).

[2] Respondent challenges the following portion of dispositional finding number 35: "Placement with the relatives is not indicated due to the parents' and the grandparents' unwillingness to consider or explain the source of the [child's] injuries." She contends that "[t]he evidence does not show what the grandparents really thought about the source of B.W.'s injuries[,]" and that the grandmother's testimony evinced a "willing[ness] to consider a potential source of the injuries[.]" In a related claim, respondent asserts that the evidence did not support a portion of finding number 30—that placing B.W. in the home of his maternal grandparents would leave the grandparents "in the untenable position of having to exclude their daughter from their home for the next seventeen and a half years in order to provide any hope of safety to the child." Respondent argues that a placement with the grandparents was not shown to be "untenable[,]" inasmuch as the grandmother testified she was willing to keep B.W.'s parents away from the child and that she and her husband were otherwise prepared to care for their grandson.

We find sufficient competent evidence to support the court's find-ing that the grandparents were unwilling to acknowledge the nature

and source of B.W.'s injuries. The grandmother testified that she visited B.W. three to five times per week before he was taken into DSS custody and saw him two days before he was examined at Frye Medical Center on 10 May 2007. Other than a "little scratch on his leg" caused by a car seat, the grandmother claimed to have "never seen any injuries on B[.W.] None." She further claimed that the child "never acted like he had anything wrong with him" and displayed "no physical evidence" of abuse at any time. The grandmother had "no idea" how the child had sustained multiple bone fractures and "c[ould ]not imagine" that respondent or the father had injured the child. When asked if she believed B.W. had experienced the injuries recorded in his medical records[,] the grandmother responded, "I'm not really sure. I—I was told so many different stories every time we would go to see him, . . . I don't know." Asked specifically if she believed the child had a fractured skull, broken leg, or broken ribs, the grandmother replied that she did not "know what to believe." Although the court did not hear separately from the grandfather, there is no indication that he held a view contrary to the grandmother's as to the child's injuries or respondent's responsibility therefor.

We further find competent evidence to support finding number 30 that the grandparents would be unlikely to deny respondent access to B.W., over time, if the child was placed in their home. The grandmother acknowledged that respondent and S.W. moved into her home after DSS took custody of B.W. and remained there until DSS required their departure as a condition of the grandparents' home study. As discussed above, the grandmother refused to credit the overwhelming medical evidence of B.W.'s injuries and insisted that the child had "never" shown any sign of injury or distress at the time DSS assumed custody. Although finding number 30 was predictive insofar as it assessed the "untenable" nature of a hypothetical placement with the grandparents, we cannot say it lacked evidentiary support. *Cf. In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999) (noting that, when a newborn child is removed from the home for abuse or neglect, the court's assessment of the risk of future abuse of neglect "must of necessity be predictive in nature").

[3] Respondent next contests the court's finding number 34 that "[t]he injuries received by B[.W.] constitute aggravated factors as defined by N.C. Gen. Stat. [§] 7B-201." Respondent argues that the purported finding of fact is actually a conclusion of law. Moreover, she contends that B.W.'s injuries were not "chronic or

torturous," and thus did not satisfy the statutory standard for aggravated circumstances under N.C. Gen. Stat. § 7B-101(2). We note that the court's finding mistakenly refers to "factors[,]" rather than "circumstances[,]" as used in N.C. Gen. Stat. § 7B-101(2), and cites to an inapposite statute dealing with the court's jurisdiction, N.C. Gen. Stat. § 7B-201. In dispositional conclusion number 5, however, the court corrects these errors, stating, "[t]he injuries suffered by this child constitute aggravated circumstances as defined by N.C. Gen. Stat. [§] 7B-101(2)."

As a general rule, "any determination requiring the exercise of judgment . . . or the application of legal principles . . . is more properly classified a conclusion of law." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted). However, our appellate courts have repeatedly found a trial court's mis-classification of a conclusion of law as a finding of fact, or *vice versa*, to be "inconsequential." *In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007); *see also State ex rel. Utilities Comm v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987) (holding that such "mislabeling is merely an inconvenience to the courts"). If a contested "finding" is more accurately characterized as a conclusion of law, we simply apply the appropriate standard of review and determine whether the remaining facts found by the court support the conclusion. *R.A.H.*, 182 N.C. App. at 60, 641 S.E.2d at 409 (quoting *In re M.R.D.C.*, 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004)). Here, the court's classification of finding number 34 is particularly inconsequential, inasmuch as it reiterated this finding as dispositional conclusion of law number 5.

The Juvenile Code defines an aggravated circumstance as "[a]ny circumstance attending to the commission of an act of abuse or neglect which increases its enormity or adds to its injurious consequences, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse." N.C. Gen. Stat. § 7B-101(2) (2007). The determination that a given set of facts meets a statutorily imposed standard is properly reviewed as a conclusion of law. We agree with the district court's conclusion that the serial infliction of multiple fractures of the skull, leg, and ribs upon a prematurely born and malnourished infant during his first eight weeks of life qualifies as "aggravated circumstances" under N.C. Gen. Stat. § 7B-101(2). Accordingly, we overrule respondent's assignment of error.

*II*

**[4]** Respondent next claims that the district court abused its discretion by failing to order a relative placement for the minor child with his maternal grandparents pursuant to the mandate of N.C. Gen. Stat. § 7B-903(a)(2)(c) (2007). We disagree.

The district court has broad discretion to fashion a disposition from the prescribed alternatives in N.C. Gen. Stat. § 7B-903(a), based upon the best interests of the child. *In re Pittman*, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567, *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). If the court elects to place the child outside the home, it must determine "whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home." N.C. Gen. Stat. § 7B-903(a)(2). Placement with a qualifying relative is required "unless the court finds that the placement is contrary to the best interests of the juvenile." *Id.*

We review a dispositional order only for abuse of discretion. *Pittman*, 149 N.C. App. at 766, 561 S.E.2d at 567. "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (citations and quotations omitted).

We find no abuse of discretion here. The district court's consideration of the maternal grandparents as a placement option for B.W. is reflected in the following findings:

> 30. The parents' unwillingness to acknowledge the nature and extent of B[.W.]'s injuries, as well as their lack of an emotioned response, together with an unwillingness of either to address the causes of B[.W.]'s multiple fracture history at 52 days of age render any placement with them not viable and places the maternal grandparents in the untenable position of having [to] exclude their daughter from their home for the next seventeen and a half years in order to provide any hope of safety to this child.
>
> . . .
>
> 35. Placement with the relatives is not indicated due to the parents' and the grandparents unwillingness to consider or explain the source of the injuries.

36. The [m]aternal grandfather underwent inpatient treatment for alcoholism in December 2006 and January 2007 and was then recommended to attend intensive outpatient substance abuse treatment.

The court expressly concluded that "[p]lacement of the minor child with a relative is contrary to the best interest of the minor child." Inasmuch as "the child's interest in being protected from abuse and neglect is paramount[,]" *Pittman*, 149 N.C. App. at 761, 561 S.E.2d at 564, we cannot say that the court's concerns about a placement with the grandparents were manifestly unreasonable.

Respondent suggests that the court's findings are insufficient to explain its disposition. Respondent's claim that "the court did not find that the grandparents were unwilling to consider or explain the source of the child's injuries" is simply contradicted by finding number 35, which cites "the grandparents' unwillingness to consider or explain the source of the [child's] injuries." We note that a "court is not required to make findings of fact on all the evidence presented," but need only "make brief, pertinent and definite findings and conclusions about the matters in issue[.]" *In re J.A.A.*, 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted). The findings in the instant case reflect that the court complied with N.C. Gen. Stat. § 7B-903(a) by properly considering and rejecting a placement with the grandparents. This assignment of error is overruled.

*III*

**[5]** In her final assignment of error, respondent challenges the court's decision to cease all efforts to reunify her with B.W. Respondent argues the court's decision was "premature and unecessary[,]" in view of the limited information obtained by Dr. Kilpatrick from his single interview with the parents. Given the possibility that she would prove amenable to treatment and would come forward with information about B.W.'s injuries, respondent contends the court mistakenly found additional efforts toward reunification to be futile.

Section 7B-507(b) of the Juvenile Code provides as follows:

In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall

not be required or shall cease if the court makes written findings of fact that:

(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time; [or]

(2) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101[.]

N.C. Gen. Stat. § 7B-507(b)(1)-(2) (2007). "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007).

In support of its decision to cease reunification efforts, the court concluded both that "[f]urther efforts to reunify the child with either parent would clearly be futile and inconsistent with [his] need for a safe permanent home within a reasonable period of time[,]" and that "[t]he injuries suffered by this child constitute aggravated circumstances as defined by N.C. Gen. Stat. § 7B-101(2)." Although either of these conclusions is sufficient grounds to support a cessation of reunification efforts under N.C. Gen. Stat. § 7B-507(b), we have already herein upheld the trial court's determination that B.W.'s injuries constituted an "aggravated circumstance" under N.C. Gen. Stat. § 7B-101(2). Therefore, we now hold that the court's decision to cease reunification efforts was supported by the necessary finding under N.C. Gen. Stat. § 7B-507(b)(2). Contrary to respondent's unsupported assertion, nothing in the statute requires "*another* court 'of competent jurisdiction'" to find aggravated circumstances before a court may cease reunification efforts pursuant to N.C. Gen. Stat. § 7B-507(b)(2) (emphasis added).[2]

The evidence before the district court showed that respondent had displayed no concern for B.W. and no inclination to come to

2. "In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that: . . . (2) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101[.]" N.C. Gen. Stat. § 7B-507(b)(2) (2007).

terms with the gravity of the abuse he suffered while in her care. Her "defensive" and "faking good" responses during her interview with Dr. Kilpatrick precluded any meaningful psychological evaluation and evinced no inclination toward treatment. Respondent also chose to remain silent at the dispositional hearing. *Pittman*, 149 N.C. App. at 760, 561 S.E.2d at 564 (holding that a parent enjoys no Fifth Amendment privilege in a juvenile proceeding). Under these circumstances, we find no abuse of discretion by the court in ceasing reunification efforts. To the extent that respondent separately excepts to the decision to cease her visitation with the child, we again find no abuse of the court's discretion.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

Judges WYNN and McCULLOUGH concur.