MURPHY, Judge.
Respondent-Father ("Gilbert")[1] appeals from orders adjudicating his child A.G. ("Ann") as a neglected juvenile and placing her in the legal custody of her mother ("Joan"). For reasons stated herein, we affirm.
BACKGROUND
By a consent order filed 24 August 2009 in Durham County District Court, joint custody of Ann was awarded to Gilbert and Joan under an arrangement in which Ann resided with each parent on certain weekdays and alternating weekends. In 2011, Ann was sexually assaulted by her half-brother in her mother Joan's home, a case substantiated the Durham County Department of Social Services ("DSS") to be sexual abuse. However, on 16 August 2016, DSS initiated another investigation into a report of sexual abuse of Ann, this time allegedly by Gilbert. Then, in September 2016, the Duke Child Abuse Neglect and Medical Evaluation Clinic ("CANMEC") conducted a forensic evaluation of Ann for alleged sexual and physical abuse. During this evaluation, Scott Snider, the clinical coordinator of CANMEC, and Lauren Rockwell, a licensed psychological associate, conducted diagnostic interviews of Ann and her mother. The CANMEC team recommended to DSS that a Child and Family Evaluation ("CFE") be conducted. The DSS investigation later concluded, finding that Gilbert had not sexually abused Ann but that he had inappropriately disciplined her by hitting her in the face and pushing her in anger on several occasions. DSS also reported that Ann's stepmother had hit Ann and kneed her in the back.
On 21 December 2016, DSS filed a juvenile petition seeking an adjudication that Ann was a neglected juvenile "in that she was not receiving proper discipline from [Gilbert] and she was living in an environment injurious to her welfare while she was residing with him." In response to this petition, the trial court conducted an adjudication hearing on 10 February 2017 and filed an order on 8 March 2017 adjudicating Ann as neglected. The trial court found that during the investigation into alleged sexual abuse, Ann stated to the CANMEC evaluators that Gilbert hit and pushed her in anger and called her stupid. Also, on one occasion, Ann was present when Gilbert hit his two stepsons with a metal pipe. Ann called the police and Gilbert was charged with assault with a deadly weapon. The charge was later dismissed. The trial court also found that Ann told CANMEC evaluators that Gilbert once came into her room while she was naked and stared at her, and he touched her buttocks. CANMEC recommended "strict maintenance of personal boundaries for [Ann] as a past victim of sexual abuse." The trial court concluded that Ann was a neglected child pursuant to N.C.G.S. § 7B-100 because she was "not receiving proper discipline" from Gilbert and was living "in an environment injurious to her welfare when with her father."
A disposition hearing was held on 31 March 2017, which was followed by an order entered on 5 May 2017. This order found that Ann, while willing to have supervised visitation with Gilbert, did not want to have overnight visitation with him. Ann also continued to express fear of her father. The trial court concluded that it is in Ann's best interest to be placed in the temporary legal custody of her mother Joan. Gilbert appealed from these adjudication and disposition orders.
ANALYSIS
A neglected juvenile is one who "does not receive proper care, supervision or discipline from [their] parent, guardian, custodian or caretaker; or who has been abandoned ... or who lives in an environment injurious to [their] welfare[.]" N.C.G.S. § 7B-101(15) (2017). The allegations in a petition alleging that a juvenile is neglected shall be proved by clear and convincing evidence. N.C.G.S. § 7B-805 (2017). We review the trial court's adjudication to determine whether the findings of fact are supported by clear and convincing evidence, and whether the legal conclusions are supported by the findings of fact. In re Pittman , 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (2002). The conclusion that a juvenile is neglected is reviewed de novo. In re V.B. , 239 N.C. App. 340, 341, 768 S.E.2d 867, 868 (2015). We review the disposition to determine whether the trial court abused its discretion in making its determination of the child's best interests. In re C.W. , 182 N.C. App. 214, 219, 641 S.E.2d 725, 729 (2007).
Gilbert challenges the trial court's conclusion of law number 3.
3. The father has failed to provide consistent treatment toward the mental health needs of the child and this creates an injurious environment. Therefore Ann is a neglected child pursuant to 7B-100(15) by clear, cogent and convincing evidence. The child is neglected in that she is not receiving proper discipline from the father and lives in an environment injurious to her welfare when with her father.
Gilbert attacks the first sentence of this conclusion, and argues that none of the trial court's findings show that Ann was not receiving therapy or that her mental health needs were otherwise not being met by him. He maintains that the evidence showed that Ann's mother was responsible for decisions related to Ann's health issues. The joint brief of the guardian ad litem and DSS attribute a different interpretation to this conclusion. Under their interpretation, Gilbert failed to provide consistent treatment toward the mental health needs of Ann by refusing to engage in recommended psychological evaluation and therapy intended to address his anger problems and other family issues that had an effect on Ann's anxiety.
The statement-the father has failed to provide consistent treatment toward the mental health needs of Ann -is ambiguous, and lends itself to multiple interpretations. Also, while this statement was embedded within a conclusion of law, the statement is more in the nature of a finding of fact. See State ex rel Utilities Comm'n. v. Eddleman, 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987) ("Findings of fact are statements of what happened in space and time."). For the purpose of deciding this appeal, we assume that this particular statement is not supported by evidence. We therefore examine the trial court's other findings to determine whether they support the adjudication. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) ("When ... ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error.").
Gilbert next challenges several of the trial court's findings on the grounds that they are unsupported by the evidence.
18. On one occasion Gilbert committed domestic violence by swinging a metal pipe and by hitting the two sons of his wife, Joan, when Ann was present. Ann called the police.
19. Gilbert was charged with assault with a deadly weapon. These charges were dismissed.
23. Ann told Rockwell that on one occasion her father came into her room and did not knock, and stared at her while she was naked. This was also reported to Scott Snider.
24. Ann made consistent statements to Snider and Rockwell that her father Gilbert had touched her buttocks.
25. This touching made Ann uncomfortable and contributed to her anxiety due to Gilbert violating private boundaries. Both Rockwell and the CANMEC team recommended strict maintenance of personal boundaries for Ann, as a past victim of sexual abuse.
If the trial court's findings of fact "are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re Williamson , 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). Gilbert argues that evidence of a single incident of him coming into Ann's room while she was naked and touching her buttocks is insufficient to support a conclusion that Ann lived in an injurious environment. Gilbert, however, ignores findings concerning other incidents which call into question the safety of the environment to Ann. For example, the findings show that he assaulted his step-sons with a metal pipe, called Ann stupid, and that Ann has expressed fear of him. After an exhaustive review of the record, we conclude that the reports of Scott Snider and Lauren Rockwell of CANMEC are sufficient evidence to support these findings by the trial court.
Gilbert also challenges finding number fifteen, along with findings thirty through thirty-five.
15. In said interview [with CANMEC], Ann stated that her father disciplined her, hitting her and pushing her out of anger.
30. Durham DSS has reviewed the written reports of the two evaluations, conducted interviews, reviewed the family history and concluded that the child is improperly disciplined because the father has hit her in the face and pushed her in anger on multiple occasions. The father's estranged wife ... also inappropriately hit and kneed the child in the back.
31. Durham DSS has also concluded that the child is in an environment injurious to her welfare when with the father due to his inability to observe appropriate personal boundaries, especially in that the child was previously sexually abused by another family member. The child has also witnessed domestic violence between the father and his estranged wife, and witnessed the father abusing the child's stepbrother by hitting him with a metal pipe. The child has also been the center of a highly contentious custody dispute between the parents as well as transitioning from households with two extremely different parenting styles.
32. The CFE recommended that there be family therapy to resolve the conflict in parenting styles and to assure continuity of care for the child. Hands off discipline, cessation of all negative speaking about the mother and child, setting of appropriate and healthy boundaries in both households, and therapy to address anger and control issues for the father were also recommended by the CFE. In furtherance of appropriate therapy for the father, a psychological evaluation of the father was suggested.
33. As part of a safety plan, Durham DSS recommended supervised visitation for the father which he refused and chose instead to cease visitation with the child. Due to the child's expressed fear of the father, the CFE recommended that visitation be resumed when it could be done under the monitoring and direction of the child's therapist.
34. After a Child and Family Team (CFT) meeting, on October 6, 2016, the father agreed to a case action plan incorporating the CFE recommendations, except that he again refused to agree to supervised visitation.
35. Immediately prior to the filing of the neglect petition, the father refused to engage in the psychological evaluation, family therapy and all other recommendations of the CFE. The father stated that the only way he would do the recommendations of the CFE is if a court ordered him to do them.
Gilbert maintains that these findings are nothing more than the "mere recitation" of the testimony and evidence admitted during the hearing. This Court has stated that "[w]here there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show." In re Gleisner , 141 N.C. App. 475, 480, 539 S.E.2d 362, 366 (2000). More recently, in In re J.W. , we addressed an argument alleging that the trial court improperly "cut-and-pasted" allegations from a petition in its findings. In re J.W. , 241 N.C. App. 44, 48, 772 S.E.2d 249, 253 (2015)discretionary review denied , 368 N.C. 290, 776 S.E.2d 202 (2015). We clarified that in reviewing findings of fact, we "will examine whether the record of the proceedings demonstrates that the trial court, through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case." Id . If, "[i]n light of the entire record and the transcript of the proceedings, we are confident that the trial court's findings are the result of its own independent, reasoned decision[ ]" we will not find reversible error. Id. at 49, 772 S.E.2d at 254.
We conclude the trial court's findings in this case are the product of an independent, reasoned decision. There is no conflicting evidence or findings as to the conclusions drawn and recommendations made. The trial court found that in addition to calling Ann stupid, Gilbert committed acts of domestic violence in Ann's presence. His discipline of Ann is severe, causes her to be anxious, and she is afraid of him. Moreover, Gilbert refused to engage in a psychological evaluation and therapy designed to address his anger and control issues. When read as a whole, the record shows that the trial court agreed with the conclusions and recommendations of DSS and CANMEC and made them its own when it ultimately concluded that Ann is "neglected."
Gilbert's final argument is that the trial court erred in modifying custody without determining that a substantial change in circumstances had occurred. Gilbert conflates the statutory provisions in Chapter 50 (which apply when a court modifies the custody arrangement between two parents due to a change in circumstances) with the provisions in the chapter that controls this case, Chapter 7B. Under Chapter 7B, the trial court is granted the authority to place a neglected child in the custody of a parent or some other suitable person if the court determines that it is in the best interest of the child. See N.C.G.S. § 7B-903(a)(4) (2017). The court need not independently conclude there has been a substantial change of circumstances. Furthermore, a discretionary disposition order entered under N.C.G.S. § 7B-903(a) will not be disturbed unless it is shown that the trial court's ruling was so arbitrary that it could not have been the product of a reasoned decision. In re B.W., 190 N.C. App. 328, 336, 665 S.E.2d 462, 467 (2008). As the trial court's findings and conclusions reflect a reasoned decision, we find no abuse of discretion. We affirm the adjudication and disposition orders.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR. and DILLON concur.

Pseudonyms are used to protect the identity of the juvenile and for ease of reading. See N.C. R. App. P. 3.1(b) (2017).