DAVIS, Judge.
A.M. ("Respondent") appeals from the trial court's order terminating his parental rights to his daughter, "Felicia,"[1] at the request of her mother K.M. ("Petitioner"). On appeal, he argues that the trial court erred by terminating his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (a)(4) (failure to pay child support), and (a)(7) (abandonment). After a thorough review of the record and applicable law, we affirm.
Factual and Procedural Background
Petitioner and Respondent married in April of 2011, and Petitioner gave birth to Felicia in August 2011. The parties separated soon after her birth when Petitioner discovered the severity of Respondent's substance abuse. After unsuccessfully attempting a reconciliation from mid-2012 to mid-2013, the parties divorced on 14 January 2015.
On 12 November 2011, the parties executed a consent order in Pender County, which granted Petitioner sole "care, custody and control" of Felicia but provided that Respondent was "entitled to exercise such visitation with the subject minor child at such times and places as the parties mutually agree." By consent order entered 4 January 2012, the parties agreed that Respondent would pay weekly child support of $125.00 until Felicia turned 18 years old.
In 2014, Petitioner moved with Felicia to Culpepper, Virginia. She remained in Virginia for approximately one year before moving back to Hampstead, North Carolina in 2015 to live with her parents. While Felicia was living in Virginia, Respondent visited with her on at least one occasion, but these visits were generally sporadic.
In October 2015, Respondent visited Petitioner's parents' home to see Felicia. Petitioner testified that Respondent appeared "high" because his eyes were dilated and he was "very incoherent." Petitioner confronted him about visiting his daughter while impaired, and he became very defensive and swore at her at which point she ordered him to leave the house. Soon after this incident, Respondent was arrested on drug-related charges.
Petitioner moved to Hubert, North Carolina in November 2015 and remarried in June 2016. After Petitioner began living with her new husband, Felicia began referring to him as "Dad."
Respondent was released on probation in April 2016. While released on probation during April and May 2016, Respondent texted Petitioner on two occasions asking if he could see Felicia and requesting that Petitioner tell Felicia that he loved her. Petitioner did not respond to these text messages.
In August 2016, Respondent and Petitioner had a recorded telephone conversation during which Respondent asked Petitioner if he could visit with Felicia. During this conversation, Petitioner told him that he could have contact with his daughter if he could prove that he could "maintain a healthy lifestyle" but that she would not allow such contact until he could prove to her that he was not going to relapse.
On or about November 2016, Respondent's probation was revoked, and he was incarcerated once again. On 9 December 2016, Petitioner filed a petition to terminate Respondent's parental rights on the grounds of neglect, abandonment, and failure to pay a reasonable portion of Felicia's cost of care. See N.C. Gen. Stat. § 7B-1111(a)(1), (4), (7) (2017). Respondent was served with the petition and summons in New Hanover County Jail on 16 December 2016. He obtained an extension of time to respond to the petition and filed his response on 15 February 2017.
In April 2017, Petitioner's husband was assigned to work at the Pentagon, and he relocated to Fort Belvoir, Virginia. Petitioner and Felicia moved to Fort Belvoir in June 2017. Respondent-who was still incarcerated at the time-did not receive Petitioner's new mailing address at this time although he still had knowledge of her cell phone number.
On 6 and 23 October 2017, a hearing was held before the Honorable Henry L. Stevens, IV on the termination petition. Petitioner, Respondent, and Respondent's mother testified at the hearing. At the conclusion of the adjudicatory stage, the court announced that Petitioner had established each of the three grounds for termination alleged in her petition.
On 11 January 2018, the trial court entered an order (the "TPR Order") terminating Respondent's parental rights to Felicia. In its written order, the court adjudicated the existence of two of Petitioner's asserted grounds for termination. The court also concluded that the termination of Respondent's parental rights was in Felicia's best interests given Petitioner's husband's desire to adopt Felicia. Respondent filed a timely notice of appeal.
Analysis
On appeal, Respondent first argues that the trial court erred in adjudicating grounds to terminate his parental rights under N.C. Gen. Stat. § 7B-1111(a)(1). Our review on appeal is limited to a determination of whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether its findings of fact support its conclusions of law. In re Shepard , 162 N.C. App. 215, 221, 591 S.E.2d 1, 5, disc. review denied , 358 N.C. 543, 599 S.E.2d 42 (2004). Under N.C. Gen Stat. § 7B-1111(a)(1), "[t]he trial court may terminate the parental rights to a child upon a finding that the parent has neglected the child." In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003). The determination that a parent has neglected or abandoned a child under N.C. Gen. Stat. § 7B-1111(a)(1) is a conclusion of law. See In re C.D.A.W. , 175 N.C. App. 680, 686, 625 S.E.2d 139, 143 (2006), aff'd per curiam , 361 N.C. 232, 641 S.E.2d 301 (2007).
I. Findings of Fact
Respondent challenges several of the findings of fact made by the trial court in the TPR Order. In the TPR Order, the trial court made the following pertinent findings of fact:
15. That the Respondent testified that he has been using opiates and heroin since a work related injury in 2011, and that it was his drug use that caused the Petitioner to end their relationship; that the Respondent has completed the New Hanover Drug Treatment Court and inpatient drug treatment at the Dart Cherry Program, and continued to use heroin after the completion of those programs.
16. That the Petitioner testified that the Respondent showed up to several visitations where he appeared to be high.
17. That Respondent testified that there were occasions where he used heroin earlier in the day prior to a visitation with the minor child, but that he did not shoot up heroin immediately prior to a visitation and that he was never "blistered" during a visitation.
18. That Respondent testified that he never purchased any cards or presents for the minor child because he used all of his money to purchase drugs.
19. That Respondent testified that the child has had birthdays in the years 2015, 2016 and 2017 where he did not speak to the child or convey an[y] birthday wishes to the child.
20. That the Respondent testified that he has been arrested six times for drug related offenses, ... and that he is currently incarcerated after having his latest probationary sentence for a drug offense revoked.
21. That Respondent testified that he has been sober for approximately two years and that he is not currently receiving any drug treatment while he is incarcerated, but that he intends to pursue treatment upon his release ....
22. That the Respondent's last visit in person with the minor child took place on October 20, 2015 at the Petitioner's parent's home in Hampstead, North Carolina; that the Petitioner testified that the Respondent appeared to be under the influence of drugs during the visit; that he subsequently cursed at the Petitioner when confronted about his condition [and] left.
23. That the Petitioner ... lived with her parents in Hampstead, North Carolina until her graduation [from college] in 2014; that the Petitioner moved to Culpepper, Virginia from August of 2014-2015 where she worked as a school teacher; that Respondent had the Petitioner's contact information, but only sporadically spoke to the minor child and never visited the minor child in Virginia.
24. That upon her return to North Carolina in 2015, the Petitioner moved to Hubert, North Carolina; that the Respondent had the Petitioner's cellular phone number, email address and her physical address at all times.
25. That the Respondent has not consistently visited with the minor child, and has not consistently had telephone communication with the minor child, having last spoken to her prior to October 20, 2015.
26. A video recording of a phone conversation between Respondent and Petitioner was admitted into evidence. Testimony from both parties indicated the conversation took place in the summer of 2016. In the video Respondent asked to visit with or speak to the minor child multiple times. Petitioner stated she would not allow visitation or phone contact until Respondent had been clean for an "extended" period of time. Petitioner did not define extended ....
27. That the Respondent has had the Petitioner's address, phone number and means to contact the minor child since 2011, but has failed to send any presents, cards, notes or [sic] to the minor child for any of her birthdays or holidays since 2015, and any items that were presented to the child had been selected and purchased by Respondent's mother, not by the Respondent.
28. That the Respondent is subject to an order to pay child support for the use and benefit of the minor child, but has failed to make a child support payment in five years.
....
33. That the minor child's whereabouts have been known to the Respondent for at least six consecutive months immediately preceding the filing of the Petitioner [sic] to Terminate Parental Rights, and the Petitioner has maintained the same telephone number for the entirety of the juvenile's life, and she has kept the Respondent informed of her residence for at least six consecutive months immediately preceding the filing of the Petition to Terminate Parental Rights.
34. That facts sufficient to warrant a determination that one or more grounds for terminating the parental rights of Respondent exist by clear, cogent and convincing evidence under N.C.G.S. § 7B-1111(a)(1) and N.C.G.S. § 7B-1111(a)(7), and are as follows:
a. That the Respondent has neglected the minor child in that he has failed to provide for her physical, emotional or developmental necessities.
b. That the Respondent has neglected the minor child in the 6 months preceding the filing of the Petition in that he has failed to send any presents, cards, or notes to the minor child for any of her birthdays, or for any other holiday since 2014, and any presents or cards that have been purchased for the minor child were provided by the Respondent's mother, as the Respondent testified that he used all of his money to purchase drugs.
c. That the Respondent has neglected the minor child in that he has abandoned her by failing to support the minor child ....
d. That the Respondent has not provided any food, clothing or any other type of support or material items to the Petitioner for the use and benefit of the minor child.
e. That the Respondent has willfully abandoned the minor child for at least six consecutive months immediately preceding the filing of the Petition to Terminate Parental Rights in that he has failed to send any presents, cards, or notes to the minor child.
Respondent first challenges Finding Nos. 15-21 and the second clause in Finding No. 22 as mere recitations of witness testimony. See In re O.W. , 164 N.C. App. 699, 703, 596 S.E.2d 851, 854 (2004) ("[I]t is not the role of the trial court as fact finder to simply restate the testimony given."). We agree the trial court's findings are invalid insofar as they merely recount Petitioner's testimony about Respondent's conduct. With regard to the findings that describe Respondent's testimony about his own actions, it appears the court may have treated Respondent's testimony as adverse admissions. See generally Jones v. Durham Anesthesia Assocs., P.A. , 185 N.C. App. 504, 509-10, 648 S.E.2d 531, 535-36 (2007) (explaining judicial and "evidential or extrajudicial admission[s]"). However, absent a binding judicial admission in the form described in Jones , see id. at 509-10 n.1, 648 S.E.2d at 536 n.1, a party's evidential admission is non-conclusive and, therefore, does not relieve the trial court of its duty to find the facts. Id. at 509, 648 S.E.2d at 535-36. Therefore, we will disregard these findings for purposes of our review.
Respondent also claims that Findings 18 and 19 misrepresent his testimony. We agree that the court's account of Respondent's testimony is not wholly accurate. When asked why his mother bought the majority of the presents for Felicia, Respondent testified that he "pretty [much] spent every dime I had on drugs when I was using them." However, to the extent that the trial court's finding implies that Respondent never bought Felicia cards or presents, this finding is inaccurate. Respondent did not testify that he "never purchased any cards or presents" for Felicia due to his drug habit. He stated that, "a lot of times" before visiting Felicia, he "would try to ... go to the dollar store and get her a little present or something, ... a little stuffed animal or some sort of ... gift[.]" Respondent estimated having sent Felicia a total of "five or six cards" on various "special occasions" over the years.
Respondent next challenges Finding Nos. 23, 24, 27, 28, and 33 as unsupported by the evidence. Respondent further objects to Finding Nos. 23, 24, 27, and 33 to the extent that they imply Petitioner "kept [him] informed of her contact information at all times, including [Felicia]'s physical address." He likewise contests the implication in Finding 23 that his "sporadic" contact with Felicia while she and Petitioner lived in Culpepper, Virginia was infrequent. Similarly, Respondent objects to Finding Nos. 34(a) and (d) insofar as they imply he was capable of providing for Felicia financially during his various periods of incarceration.
Appellate review of a trial court's findings of fact does not include an inquiry into their possible unstated implications. Arguments of this nature are perhaps better raised in challenging the sufficiency of the court's findings to support a conclusion of law. Thus, we will not address Respondent's assertions about what a particular finding "insinuates."
With respect to Finding No. 23, we are satisfied that the record evidence fully supports the trial court's finding. Petitioner testified that she provided Respondent with her address when she moved to Culpepper, Virginia in August 2014. Petitioner's testimony also supports the statement in Finding No. 23 that Respondent "only sporadically spoke to [Felicia] and never visited [Felicia] in Virginia."
Finding No. 24 is also substantially supported by the evidence. Petitioner testified that her email address and telephone number remained constant throughout the relevant period. She admitted she did not provide Respondent or his mother with her address in Hubert, North Carolina, after moving there from Virginia in November 2015. However, Petitioner stated that Respondent's "grandmother had the address." Respondent acknowledged obtaining this address from his grandmother. Although Respondent may have lacked Petitioner's address for a brief period of time before he obtained it from his grandmother, any error in this finding is immaterial.
With respect to Finding No. 27, the trial court's finding is erroneous in that it states Respondent had knowledge of Petitioner's current address at the time of the termination hearing in October 2017. Petitioner acknowledged that she had not provided Respondent with her current address in Fort Belvoir, Virginia where she and Felicia lived between June 2017 and the time of the TPR hearing in October 2017. Respondent testified he did not have Petitioner's address and was unaware that she and Felicia had returned to live in Virginia. Respondent's mother also testified that she sent Petitioner a text message asking for Felicia's address in July 2017 but received no response.
Respondent does not challenge the remaining portions of Finding No. 27 that state he had knowledge of Petitioner's addresses prior to June 2017. During this time, Respondent did not consistently send any cards, gifts, or money of his own accord. Thus, the remaining portions of this finding are binding for purposes of our review. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").
Finding No. 28 states that Respondent "has failed to make a child support payment in five years." This finding is supported by the evidence. Petitioner testified she kept a record of Respondent's payments, the last of which he made in August of 2012 in the amount of $42. Respondent did not dispute Petitioner's account that he had paid no child support since August of 2012. He produced receipts purporting to show his transfer of $100 into Petitioner's bank account on 9 December 2014 and 2 January 2015 as well as his sending of a MoneyGram to Petitioner in the amount of $96.50 on 4 February 2015. However, he conceded these receipts may have reflected occasions when he provided "gas money" to Petitioner so that she could "bring [Felicia] down" from Virginia to North Carolina. To the extent the parties presented conflicting evidence on this issue, the court was entitled to credit Petitioner's version of events. See In re Gleisner , 141 N.C. App. at 480, 539 S.E.2d at 366 ("Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established ....").
With respect to Finding No. 34, we agree that the trial court's finding is unsupported to the extent that it implies that Respondent had the financial resources to provide gifts for Felicia while he was incarcerated. Respondent's mother testified that he was not earning any income during this time period. However, with respect to the other time periods during which Respondent was not incarcerated prior to the termination hearing, there is no evidence that Respondent did not have monetary funds to provide for Felicia's needs.
Furthermore, we note that portions of Finding No. 34 constitute conclusions of law because they articulate the basis for the trial court's adjudications under N.C. Gen. Stat. § 7B-1111(a). We review these determinations accordingly. See In re B.W. , 190 N.C. App. 328, 335, 665 S.E.2d 462, 467 (2008) ("If a contested 'finding' is more accurately characterized as a conclusion of law, we simply apply the appropriate standard of review and determine whether the remaining facts found by the court support the conclusion.").
II. Neglect
Having addressed each of Respondent's exceptions to the trial court's findings of fact, we now consider his challenge to the court's conclusions of law that grounds existed to terminate his parental rights under N.C. Gen. Stat. § 7B-1111(a)(1). The Juvenile Code defines a neglected juvenile as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent ... or who has been abandoned." N.C. Gen. Stat. § 7B-101(15) (2017). Although neglect may be shown by a parent's abandonment of the child, we note that an adjudication under N.C. Gen. Stat. § 7B-1111(a)(1) requires a showing of neglect at the time of the termination hearing , rather than during the six months that immediately preceded the petitioner's filing of the petition.[2] Compare In re C.W. , 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007) ("Neglect must exist at the time of the termination hearing[.]"), with N.C. Gen. Stat. § 7B-1111(a)(7) (authorizing termination where "the parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition").
A petitioner may establish neglect at the time of the termination hearing by proof that the non-custodial parent has abandoned the child. See, e.g. , In re Yocum , 158 N.C. App. 198, 204, 580 S.E.2d 399, 403, aff'd per curiam , 357 N.C. 568, 597 S.E.2d 674 (2003) ; see also Humphrey , 156 N.C. App. at 540-41, 577 S.E.2d at 427 (noting "[t]he statute does not impose a six-consecutive-month requirement when the child is classified as neglected due to abandonment"). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." In re S.R.G. , 195 N.C. App. 79, 84, 671 S.E.2d 47, 51 (2009) (citation and quotation marks omitted), disc. review denied , 363 N.C. 804, 691 S.E.2d 19 (2010).
This Court has defined abandonment as
wilful [sic] neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully [sic] neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.
Humphrey , 156 N.C. App. at 540, 577 S.E.2d at 427 (citation omitted).
We have also held that "[w]illfulness is more than an intention to do a thing; there must also be purpose and deliberation." S.R.G. , 195 N.C. App. at 84, 671 S.E.2d at 51 (citation and quotation marks omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." Id. (citation and quotation marks omitted).
In the case of a parent who is incarcerated, we have consistently held that "[i]ncarceration, standing alone, neither precludes nor requires a finding of willfulness [on the issue of abandonment,]" and "[d]espite incarceration, a parent failing to have any contact can be found to have willfully abandoned the child[.]" In re D.M.O. , --- N.C. App. ----, ----, 794 S.E.2d 858, 862 (2016) (citation and quotation marks omitted). "However, the circumstances attendant to a parent's incarceration are relevant when determining whether a parent willfully abandoned his or her child, and this Court has repeatedly acknowledged that the opportunities of an incarcerated parent to show affection for and associate with a child are limited." Id. at ----, 794 S.E.2d at 862-63.
In the present case, the trial court concluded as follows in adjudicating grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(1) :
That Respondent has neglected the minor child in that she does not receive proper care, supervision, or discipline from the Respondent; she has been abandoned by the Respondent;[ ] Respondent has failed to provide for the minor child's physical, emotional or developmental necessities, and failed to provide support for the minor child in over five years. ...
Respondent argues that the willfulness element is lacking here. However, the trial court's findings show that-at the time of the termination hearing in October 2017-Respondent had exhibited at least four years of irregular and infrequent contact with Felicia, made no attempt to communicate with her since August 2016, and paid Petitioner no child support for more than five years. He had not seen Felicia in person or spoken to her since October 2015, a visit which was cut short by the fact that he was "high."
Admittedly, Respondent's lack of contact with Felicia was due-at least in part-to Petitioner's denial of his sporadic requests to see her. However, it was due to the adverse effect of his continued drug abuse on his daughter that Respondent had been instructed by Petitioner that he could not have contact with Felicia. See D.M.O. , --- N.C. App. at ----, 794 S.E.2d at 863 (stating that "the effects of a parent's addiction may be relevant when considering evidence related to willfulness on the issue of abandonment").
Moreover, even assuming that the actions of Petitioner contributed to Respondent's inability to visit his daughter, Respondent's own actions of consistently withholding love, care, and filial affection for his daughter were sufficient to demonstrate abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Until June 2017, Respondent had knowledge of Petitioner's mailing address and nevertheless made no consistent effort to send Felicia cards,[3] gifts, or money.[4] Respondent testified that his history of opiate addiction resulted in him spending "pretty [much] every dime [he] had on drugs" such that he was unable to financially provide for Felicia or buy her birthday or Christmas presents. Moreover, Respondent testified that while he was incarcerated he never called Petitioner despite having access to her phone number. Although he contends that she would have had to accept the charges for the call and would have refused to do so, the fact remains that no such attempts were ever made.
The present case is similar to cases where we have held that an incarcerated parent abandoned a child by withholding love and filial affection from the child and is distinguishable from cases where it was apparent that the parent made a consistent effort to keep in contact with the child. Compare Yocum , 158 N.C. App. at 204, 580 S.E.2d at 403 (affirming termination of parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) where respondent-father did not pay child support, never sent child gifts on her birthday, was only incarcerated for a portion of child's life and maintained employment while not incarcerated, and had limited contact with child since her birth, consisting of "no more than five visits"), with In re C.W. , 182 N.C. App. at 222-24, 641 S.E.2d at 731-32 (reversing adjudication of neglect where respondent-father "was very consistent in writing the children" and "up until [his] incarceration, he cared for the children and enjoyed spending time with them").
Thus, based on this evidence we conclude there was sufficient evidence to support the trial court's conclusion that Respondent had neglected Felicia by abandonment at the time of the TPR hearing. Therefore, the trial court properly determined that termination of parental rights was appropriate under N.C. Gen. Stat. § 7B-1111(a)(1). Accordingly, we affirm the trial court's TPR order.
Conclusion
For the reasons stated above, we affirm the trial court's 11 January 2018 order.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and ZACHARY concur.

A pseudonym is used throughout this opinion for the protection of the minor child and for ease of reading.

The trial court's conclusion in Finding 34(b) "[t]hat Respondent has neglected the minor child in the 6 months preceding the filing of the Petition" thus reflects a misapplication of the applicable law and will not sustain an adjudication under N.C. Gen. Stat. § 7B-1111(a)(1). See Humphrey , 156 N.C. App. at 541, 577 S.E.2d at 427 ("The statute does not impose a six-consecutive-month requirement when the child is classified as neglected due to abandonment.").

Petitioner testified that Felicia received cards from Respondent's mother to which Respondent had signed his name but never received cards directly from him.

We note that Respondent's mother testified Respondent earned no income for his work release assignment in prison, and the court received no evidence to the contrary. However, even prior to his incarceration, the evidence demonstrated that Respondent did not regularly purchase or offer gifts to Felicia despite having money to buy drugs.